James JOHNSTON and Judy Johnston, Appellants–Intervenors,

and

Richard Allen Dobeski, Appellee–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 64A04–9801–PC–32.

Court of Appeals of Indiana.

Dec. 9, 1998.

Donald W. Pagos, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, for Appellants–Intervenors.

Jeffrey A. Modisett, Attorney General, Greg Ullrich, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff State of Indiana.

J. David Keckley, South Bend, for Appellee–Defendant Dobeski.

## OPINION

BROOK, Judge.

### Case Summary

Appellants-intervenors James Johnston and Judy Johnston ("Johnstons") appeal from the trial court's denial of their motion to vacate Richard Allen Dobeski's ("Dobeski") sentence modification.

### Facts and Procedural History

Dobeski murdered the Johnstons' two children in Michigan City, Indiana on August 31, 1964. On October 22, 1965, Dobeski was sentenced to two consecutive life terms of imprisonment for two convictions of murder in the first degree. Pursuant to a sentence modification agreement between Dobeski and the LaPorte County deputy prosecuting attorney in which Dobeski agreed to dismiss his petition for post-conviction relief, the trial court modified Dobeski's sentence to two consecutive 40–year terms on July 12, 1989. The Johnstons received no official notice of the sentence modification and remained unaware of it until a family friend informed them that a notice of parole hearing for Dobeski had appeared in the Michigan City newspaper. The Johnstons filed a motion to vacate Dobeski's sentence modification on May 14, 1997. Hearings were held on the motion on June 27, 1997 and October 3, 1997. Dobeski filed a motion to strike the Johnstons' motion on October 7, 1997. On October 9, 1997, the trial court issued an order granting Dobeski's motion to strike and declaring the Johnston's motion null and void, having found that the Johnstons lacked legal standing to file their motion to vacate Dobeski's sentence modification. The Johnstons now appeal.

Pursuant to Ind. Appellate Rule 2(B), the attorney general is the representative of the State in this appeal, rather than the LaPorte County prosecuting attorney. The attorney general agrees with the Johnstons that the trial court had no authority to accept Dobeski's sentence modification agreement and that the modification should be vacated.[1]

---

1. This Court commends the attorney general for recognizing the trial court's lack of authority to

accept Dobeski's sentence modification, even though the modification agreement was sanc-

## Issues

The Johnstons raise one issue on appeal which we restate as two:

(1) Whether the trial court erred in ruling that the Johnstons lacked standing to file their motion to vacate Dobeski's sentence modification; and

(2) Whether the trial court erred in modifying Dobeski's sentence.

## Discussion and Decision

### I. Standing

 With respect to the issue of standing, we note that plaintiffs must demonstrate a personal stake in the outcome of the lawsuit and must show that they have sustained or were in immediate danger of sustaining some direct injury as a result of the conduct at issue in order to invoke a court's jurisdiction. *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind.1985). Notwithstanding any emotional impact suffered by the Johnstons during these proceedings and their obvious desire to compel the defendant to serve his original sentence, Dobeski correctly asserts that he and the State are the only two parties with legal standing in this case. The State prosecuted Dobeski during the original trial, and both are parties to the sentence modification agreement that is the basis for the Johnstons' appeal. The Johnstons cite no cases or statutes to support their claim of standing, nor has this Court discovered any authority that would enable them to intervene and mount a legitimate appeal.

### II. Modification of Sentence

 Having determined that the Johnstons lacked standing to file their motion to vacate Dobeski's sentence modification and therefore standing to bring this appeal, this Court would ordinarily be required to dismiss their appeal without further ado. However, the State as a party with standing asserts for the first time on appeal that the trial court lacked authority to accept the sentence modification agreement. A judgment may be void for want of a court's authority to render the particular judgment, though the court may have had jurisdiction over both the subject matter and the parties. *Beanblossom v. State*, 637 N.E.2d 1345, 1349 (Ind.Ct.App.1994), *trans. denied.*[2] A void judgment can be attacked directly or collaterally at any time. *Id.* Moreover, "a trial court's failure to sentence a defendant in accordance with statutory requirements constitutes fundamental error, and may therefore be presented by the State for the first time on appeal."[3] *Abron v. State*, 591 N.E.2d 634, 638 (Ind.Ct.App.1992), *trans. denied.*

 It may be argued that the issue of Dobeski's sentence modification would never have been presented to this Court but for the Johnstons' appeal, for which they can claim no standing. However, "a court of review cannot ignore a fundamental error which is apparent on the face of the record, such as an incorrect sentence." *Kleinrichert v. State*, 260 Ind. 537, 543, 297 N.E.2d 822, 826 (1973). To attain the level of fundamental error, " 'the error must constitute a clearly

---

tioned by the State's representative at the trial court level. Representatives of the State, whatever their status, must remain vigilant to ensure that officers of the court do not exceed their statutory authority, which the attorney general has done in this case.

2. At this point, we wish to note the important differences between "void" and "voidable" judgments:

 The distinction between a void and voidable judgment is no mere semantic quibble. 'A void judgment is one that, from its inception, is a complete nullity and without legal effect....' 46 Am.Jur.2d *Judgments* § 31 (1994). By contrast, a voidable judgment 'is not a nullity, and is capable of confirmation or ratification. Until superseded, reversed, or va-

cated it is binding, enforceable, and has all the ordinary attributes and consequences of a valid judgment.' 46 Am.Jur.2d *Judgments* § 30 (1994).

*Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind.1998). In the instant case, the trial court's lack of authority to accept Dobeski's sentence modification agreement rendered its judgment void and therefore subject to direct or collateral attack at any time. *See Beanblossom*, 637 N.E.2d at 1349.

3. Our use of the term "fundamental error" in this instance refers strictly to "gross error which offends our concept of criminal justice," not to its more prevalent modern usage concerning "denial of fundamental due process." *See Turner v. State*, 682 N.E.2d 491, 497 (Ind.1997).

blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively.'" *Turner v. State*, 682 N.E.2d 491, 497 (Ind.1997). Fundamental error may encompass illegal sentences in violation of express statutory authority, as the State has alleged in this case. *Thompson v. State*, 634 N.E.2d 775, 777 (Ind. Ct.App.1994). Although the issue of fundamental error is primarily raised by defendants attacking purportedly illegal sentences, correction of fundamental error is not intended for the advantage of the accused. *Moon v. State*, 267 Ind. 27, 29, 366 N.E.2d 1168, 1169 (1977). Finally, "[i]t is the duty of appellate courts to bring illegal sentences into compliance ... 'even if such correction increases the punishment.'" *Golden v. State*, 553 N.E.2d 1219, 1223–1224 (Ind.Ct. App.1990), *trans. denied*, quoting *United States v. Edmonson*, 792 F.2d 1492, 1496 (9th Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987).

■ Returning to the threshold questions of standing and this Court's ability to address the merits of this appeal, we note that the State would be the proper party to attack the trial court's sentence modification; in this case, however, the parents of Dobeski's victims filed the motion to vacate the modification and appealed the trial court's nullification thereof for lack of standing. As we noted in *Abron*, the State ordinarily may appeal only those matters specifically authorized by IND. CODE § 35–38–4–2, but may allege fundamental error regarding an illegal sentence for the first time on appeal. *Abron*, 591 N.E.2d at 638.[4] As a further consideration, this Court has been empowered to review sentences pursuant to Article 7 § 6 of the Indiana Constitution and Ind.App. Rules 17(A)(1) and (3). Nevertheless, "we cannot revise a sentence unless we are left with a firm conviction that a mistake has been made which is readily apparent and not subject to reasonable dispute." *Hardebeck v. State*, 656

N.E.2d 486, 490 (Ind.Ct.App.1995), *trans. denied*. The State has alleged fundamental error that is glaringly apparent on the face of the record, and our disposition of the contested issue substantially affects the rights and interests of both the State and Dobeski as parties with standing currently before this Court; therefore, we assert jurisdiction over the interested parties and the subject matter *sua sponte* and will address the issue of Dobeski's sentence modification on the merits.

■ This Court has traditionally granted trial courts broad discretion in sentencing and has been reluctant to modify a sentence on appeal, "provided it falls within the statutory boundaries and there is no clear evidence of abuse." *Id.* IND. CODE § 35–38–1–17 provides one of the very few statutory avenues available to a trial court for reducing or modifying a criminal defendant's sentence. "After final judgment, a court retains only such continuing jurisdiction as is permitted by the judgment itself or as is given the court by statute or rule." *Beanblossom*, 637 N.E.2d at 1347. The statute reads in relevant part as follows:

**35–38–1–17 Reduction or suspension of sentence**

* * * * *

(b) If more than three hundred sixty-five (365) days have elapsed since the defendant began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney. The court must give notice of the order to reduce or suspend the sentence under this section to the victim (as defined in IC 35–35–3–1) of the crime for which the defendant is serving the sentence.

(c) The court may suspend a sentence for a felony under this section only if suspension is permitted under IC 35–50–2–2.[5]

---

4. Ind. Appellate Rule 17(A)(2) provides that "[a]ppellate review of sentences under this rule may not be initiated by the State." In *Abron*, we specifically stated that Ind. Appellate Rule 17(A)(2) does not apply in cases of fundamental error in sentencing, "regardless how the matter comes to our attention." *Abron*, 591 N.E.2d 634, 638, n. 6. Similarly, the State is not required to

file a motion to correct erroneous sentence pursuant to IND. CODE § 35–38–1–15 in cases of fundamental error. *Id.* at 638.

5. IND. CODE § 35–50–2–2(b)(4)(A) lists murder among those crimes for which a court may suspend "only that part of the sentence that is in excess of the minimum sentence."

\* \* \* \* \*

(e) Notwithstanding subsections (a) and (b), the court is not required to conduct a hearing before reducing or suspending a sentence if:

(1) the prosecuting attorney has filed with the court an agreement of the reduction or suspension of the sentence; and

(2) the defendant has filed with the court a waiver of the right to be present when the order to reduce or suspend the sentence is considered.

 In both the record and his appellate brief, Dobeski makes the curious argument that the sentence modification agreement he signed with the deputy prosecutor is the "functional equivalent of a plea agreement." Prosecuting attorneys are granted wide latitude in drafting plea agreements, but those agreements must comply with statutory requirements, specifically IND. CODE § 35–35–3–1 through § 35–35–3–7 and any relevant sentencing provisions. *See Badger v. State,* 637 N.E.2d 800, 802 (Ind.1994) ("the plea bargaining process is controlled in large measure by statute," and all parties must follow statutory rules to attain balance of rights "[of victims, defendants, and society at large]" struck by legislature). Dobeski's so-called "plea agreement" fails to pass statutory muster in several fundamental respects. IND. CODE § 35–35–3–3 provides that a plea agreement must be made by the prosecuting attorney to a court on a felony charge before a defendant enters a plea of guilty: Dobeski was convicted of murder in 1965. Both the trial court and the prosecuting attorney failed to comply with the victim notification requirements of IND. CODE § 35–35–3–2. More importantly, Dobeski's agreement is illegal under the applicable sentencing statute, which will be discussed in more detail below. As a final consideration, a plea agreement provision waiving a defendant's right to seek post-conviction relief is void and unenforceable. *Majors v. State,* 568 N.E.2d 1065, 1067–1068 (Ind.Ct.App.1991), *trans. denied.*

 It is clear that Dobeski's sentence modification agreement cannot be considered a plea agreement, and we must therefore determine its legitimacy pursuant to IND. CODE § 35–38–1–17. We first note that the court did not comply with subsection (b) of the statute, having failed to give notice to the Johnstons of its order to reduce Dobeski's sentence. Next, there is no evidence that the court obtained a report from the department of correction concerning Dobeski's conduct while imprisoned pursuant to IND. CODE § 35–38–1–17(a)(3). Most importantly, the court had no authority to modify Dobeski's sentence under any sentencing scheme other than that effective in 1964, when Dobeski committed his crimes. *Cf. Elkins v. State,* 659 N.E.2d 563, 565 (Ind.Ct. App.1995) (defendant must be sentenced "in accordance with the statute in force at the time the offense was committed unless an amendment to the statute is effective prior to sentencing and the amendment provides for an ameliorative penalty").

 In 1964, the only sentences authorized for murder in the first degree were death and life imprisonment. IND. CODE § 10–3401 (1956). Furthermore, Pub.L. No. 341 § 150 (1977) expressly provides that the 1977 sentencing statutes do not affect the "rights or liabilities accrued[,] penalties incurred[,] or proceedings begun before October 1, 1977." *See Parsley v. State,* 273 Ind. 46, 47–48, 401 N.E.2d 1360, 1361 (1980), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980). "A sentence which is contrary to, or violative of, the penalty mandated by the applicable statute is an illegal sentence." *Lockhart v. State,* 671 N.E.2d 893, 904 (Ind.Ct.App.1996). As noted above, "a trial court's failure to sentence a defendant in accordance with statutory requirements constitutes fundamental error." *Abron,* 591 N.E.2d at 638. Therefore, the trial court committed fundamental error in modifying Dobeski's sentence to two consecutive 40–year terms.

 Dobeski contends that the modification agreement was signed by "all necessary parties" and "approved and ordered by the trial court," which served to cloak the agreement in the sanctity of a contract, albeit an illegal one. A contract "made in violation of statute is void and unenforceable." *Sinn v. State,* 609 N.E.2d 434, 436 (Ind.Ct.App.1993),

*trans. denied.* As this Court also noted in *Sinn,*

> Moreover, we cannot sanction an illegal sentence simply because it was the product of an agreement. For example, although ludicrous, we would not enforce a sentence of death for jay walking simply because the sentence was the product of a plea agreement. Courts are duty bound to correct illegal sentences.

*Id.* Similarly, we cannot sanction Dobeski's illegal sentence modification because it was the product of an agreement.

## Conclusion

The trial court's judgment with respect to the Johnstons' motion to vacate is affirmed, and the trial court is ordered on remand to vacate Dobeski's sentence modification agreement and reinstate his original sentence of two consecutive life terms of imprisonment.

Affirmed in part and remanded in part with instructions.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the majority's conclusion that the trial court erred in modifying the sentences originally imposed. I agree that the State was always a party to the various proceedings and for that reason has standing to question the validity of the sentence modification, even though that modification was made pursuant to an agreement between the county prosecutor's office and the defendant. In doing so, however, I do not join all of the analyses set forth by the majority in reaching its conclusions.

I do wholeheartedly agree that there is a meaningful distinction between "void" and "voidable" judgments, particularly as those terms are applied to judgments entered despite various jurisdictional defects. However, I do not agree that every jurisdictional defect, whether the issue is jurisdiction of the subject matter, jurisdiction of the person, or jurisdiction of the particular case, renders the judgment absolutely "void" *ab initio,* as opposed to "voidable". Although there are several cases which use, inadvertently I believe, the term "void" as opposed to voidable, the distinction remains important, particularly with regard to questions of waiver by the challenging party and questions of when such a challenge may be made.

To be sure, in *Beanblossom v. State* (1994) Ind.App., 637 N.E.2d 1345, a sentence modification case, a panel of this court drawing from *Christakis v. State* (1986) Ind.App., 493 N.E.2d 471 used the term "void" with reference to a judgment entered when the trial court had jurisdiction of the subject matter and jurisdiction over the parties, but when the court had lost jurisdiction over the particular case. In *Christakis,* the trial court lost jurisdiction of the particular case and therefore lacked the authority to grant "shock probation" after the expiration of the statutory time period for such action. *See also Shotwell v. Cliff Hagan Ribeye Franchise, Inc.* (1991) Ind., 572 N.E.2d 487, 489 (default judgment entered despite absence of personal jurisdiction due to ineffective service of process held "void".); *Underhill v. Franz* (1951) 230 Ind. 165, 173, 101 N.E.2d 264 (judgment held "void" in part as to relief granted which exceeded statutory authority although court had jurisdiction of the subject matter, the particular case and the parties); *Chapin v. Hulse* (1992) Ind.App., 599 N.E.2d 217 (distinction between void and voidable judgments acknowledged but held reconsideration of denial of a motion to correct errors and setting aside of an earlier judgment was "void" and therefore subject to collateral attack); *Bolerjack v. Forsythe* (1984) Ind.App., 461 N.E.2d 1126 (relief granted by judicial review court reversing an administrative decision exceeded it's prerogative and was "void").

These cases, whether inadvertently or not, may be viewed in isolation as having obliterated the distinction among and between jurisdiction of the subject matter, jurisdiction of the person, and jurisdiction of the particular case. While at first blush such "simplification" may seem to confer a benefit in making all jurisdictional issues subject to the same legal and procedural analysis, one might reasonably conclude that myriad traps and unknown problems lie ahead. For instance, if all judgments, entered notwithstanding some

jurisdictional defect, are "void," such defects could never be deemed waived. Furthermore, any judgment entered notwithstanding some jurisdictional defect, whether minor or not, whether procedural or substantive, will be subject to collateral attack without regard to time constraints. Such state of the law would seem to disavow our traditional concept that at some point in time judgments achieve a degree of finality.

Notwithstanding such cases, firmly fixed principles of jurisdiction with respect to issues of judgment finality and waiver of error are found in other judicial pronouncements which extend back many decades and continue to be made today.

In *Farley v. Farley* (1973) Ind.App., 157 Ind.App. 385, 300 N.E.2d 375, the court acknowledged the long-standing distinction between jurisdiction of the subject matter and jurisdiction of the particular case and noted that only the latter is waived by a party who does not present the question in a timely fashion. Subsequently, the court in *Trook v. Lafayette Bank and Trust Co.* (1991) Ind. App., 581 N.E.2d 941, 944–945 *trans. denied,* stated the issue and governing principles as follows:

> "Case law, both in Indiana and elsewhere, seems frequently to use the terms 'void' and 'voidable' interchangeably, without due regard for the technical—but nonetheless important—difference between their meanings.
>
> > '*[V]oid* in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it.' (Emphasis in original) *Black's Law Dictionary* 812 (abridged 5th ed. 1983).
>
> 'Void' therefore may properly be used only when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification. 'Voidable,' on the other hand, describes an action or subject matter which nonetheless operates to accomplish the thing sought to be accomplished, until the fatal flaw is judicially ascertained and declared. However, a court sometimes uses the term 'void' when the effect of its holding indicates that the action or subject matter it describes is really voidable—that is, capable of ratification or confirmation. *See, e.g., Jessup v. Jessup* (1897) 17 Ind.App. 177, 46 N.E. 550.

> Into this analysis we inject the term 'void *ab initio*,' which means literally 'void from the beginning' and denotes an act or action that never had any legal existence at all because of some infirmity in the action or process. It is readily apparent that 'void *ab initio*' has essentially the same meaning as 'void.' In fact, 'void *ab initio*' is perhaps preferable because it more vividly underscores that concept which represents the significance of the difference between the term 'voidable' and the terms 'void' and 'void *ab initio*': the former describes an act or subject matter that, although flawed in some respect, is not beyond retrieval; the latter describe an act whose flaw renders the act irretrievable and without effect.

> Nowhere is the distinction between 'void' and 'voidable' more clearly brought into focus than in the area of jurisdiction. There are three jurisdictional elements in every action: jurisdiction of the subject matter; jurisdiction of the person; and jurisdiction of a particular case. *State ex rel. Public Service Commission v. Johnson Circuit Court* (1953) 232 Ind. 501, 112 N.E.2d 429. A judgment rendered by a court without jurisdiction to hear that particular case is voidable because the jurisdictional defect is waivable if not attacked by a timely appeal. *D.L.M. v. V.E.M.* (1982) 1st Dist. Ind.App., 438 N.E.2d 1023. On the other hand, lack of subject matter jurisdiction renders void any action undertaken by the court because the defect is not susceptible to waiver or cure. *Behme v. Behme* (1988) 1st Dist. Ind.App., 519 N.E.2d 578. Regrettably, the label which courts attach to actions involving defects in personal jurisdiction has occasionally been misapplied."

In *Greer v. State* (1997) Ind., 685 N.E.2d 700, 704, our Supreme Court noted that subject matter jurisdiction "can never be waived," while jurisdiction over a particular case "is waivable if not raised at the earliest

possible opportunity." The court, however, held that failure to timely file a praecipe for appeal in a criminal case concerned jurisdiction of the particular case and had been waived by the State, but that an attempted belated appeal of a denial of credit time as against the sentence imposed, under P.C. 2, involved subject matter jurisdiction because the P.C. Rule deals with appeals from "the conviction." The decision of the Court of Appeals upon the merits of the belated appeal was therefore held to be "void." *But see Dixon v. Siwy* (1996) Ind.App., 661 N.E.2d 600, in which this court expressed the view that in the medical malpractice context, the trial courts have "subject matter" jurisdiction over the "class" of cases, i.e. medical malpractice claims, but that absent an opinion by the medical malpractice panel as required by statute, the court lacks jurisdiction over that particular case. The two cases would seem to be in some disagreement as to when a statutory or binding judicial rule, establishing a procedural prerequisite or condition for the exercise of jurisdiction, involves subject matter jurisdiction and when it involves jurisdiction of the particular case.

Most recently, our Supreme Court in *Stidham v. Whelchel* (1998) Ind., 698 N.E.2d 1152, 1154, observed that "[t]he distinction between a void and voidable judgment is no mere semantic quibble," citing and discussing some of the cases herein noted. In its final conclusion, however, the court held as follows: "[A] judgment rendered without personal jurisdiction over an indispensable party is *void* as to *that party*." *Id.* at 1157 (emphasis supplied). By its qualifying language, restricting the effect of the judgment to the particular party involved, I can only construe the holding in *Stidham* to say that such a judgment is voidable rather than void.

While I am of the view that the judgment here falls within the traditional category of "voidable" judgments, because the State was and is a party with standing to challenge the judgment, I would hold that the failure of the State, in the person of the deputy prosecutor, to earlier oppose the sentence modification did not constitute a waiver of the prerogative to challenge the trial court's authority to revise Dobeski's sentence. Further, I would hold that this challenge is timely notwithstanding that it appears to be in the form of

a collateral attack. In so stating, I recognize that I have arguably placed this "voidable" judgment in a special category, making it the functional equivalent of a "void" judgment and, in doing so, have consciously ignored the very bases for distinguishing between void and voidable judgments. I have also perhaps added validity to the "simplification" approach mentioned above which places all judgments infected with jurisdictional defects in the "void" category. Be that as it may, the dilemma perhaps may be best resolved by a future decision from our highest court.