James JOHNSTON and Judy Johnston,
Appellants (Intervenors below),

v.

Richard Allen DOBESKI, Appellee
(Petitioner below),

and

State of Indiana, Appellee
(Respondent below).

No. 64S04–9902–PC–140.

Supreme Court of Indiana.

Nov. 22, 2000.

Rehearing Denied Feb. 1, 2001.

Donald W. Pagos, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, Indiana, Attorney for Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, Greg Ullrich, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee State.

J. David Keckley, South Bend, Indiana, Attorney for Appellee Dobeski.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

In 1964, sixteen-year-old Richard Dobeski murdered two children. He received consecutive life sentences under the indeterminate sentencing system in effect at the time. In 1989, the State agreed to reduce the two life sentences to two consecutive 40 year terms in return for Dobeski agreeing to dismiss his claims for post-conviction relief. This appeal challenges the validity of that agreement, which we affirm.

### Background

On August 31, 1964, Richard Allen Dobeski, at sixteen years of age, murdered James and Judy Johnston's two minor children. The sentence for murder in effect at the time was an indeterminate term of life, subject to parole. Burns Ind.Stat. Ann. § 10–3401 (1956 Replacement). Accordingly, the trial court sentenced Dobeski to two consecutive life terms of imprisonment. In January, 1985, Dobeski filed a petition for post-conviction relief, alleging violations of his constitutional rights during his trial. On July 10, 1989, Dobeski and the State entered into a court-approved agreement in which Dobeski agreed to dismiss his petition for post-conviction relief with prejudice, and the State agreed that Dobeski's original sentences would be modified "to a sentence of forty (40) years on each [murder] count to be served consecutively with credit for time served." The local prosecutor's office did not notify the Johnstons of this agreement and they remained unaware of it until a friend informed them that notice of a parole hearing for Dobeski appeared in the local newspaper.

On May 14, 1997, the Johnstons asked the post-conviction court to allow them to intervene and to vacate the 1989 agreement between the State and Dobeski, on grounds that it was illegal and did not comply with Indiana law governing sentence modification. The trial court conducted hearings on the Johnstons' requests on June 27, 1997, and October 3, 1997. On October 7, 1997, Dobeski asked the court to dismiss the Johnstons' motions. On October 9, 1997, the trial court granted Dobeski's request and dismissed the Johnstons' motions, finding that they lacked legal standing to challenge Dobeski's agreement with the State. The Johnstons appealed.

On appeal, the State changed its position and sided with the Johnstons, arguing that the trial court had no authority to accept an agreement for a sentence less than a life sentence on either murder conviction. The Court of Appeals agreed with the trial court that the Johnstons lacked standing to intervene, but held that the trial court had committed fundamental error in modifying Dobeski's sentence to two consecutive 40–year terms because "[i]n 1964, the only sentences authorized for murder in the first degree were death and life imprisonment." *Johnston v. State*, 702 N.E.2d 1085, 1090 (Ind.Ct.App.1998). The Court of Appeals vacated the 1989 agreement between the State and Dobeski. *Id.* at 1091.

*Discussion*

### I

■■ We agree with the trial court and Court of Appeals that the Johnstons lacked standing to intervene and adopt and incorporate by reference Part I of the Court of Appeals's opinion addressing that issue.

### II

The essential issue presented to us is the authority of a prosecutor and a petitioner for post-conviction relief to resolve a post-conviction claim—and the extent of that authority.

### A

■■ We take judicial notice that Indiana prosecutors and petitioners for post-conviction relief do resolve post-conviction relief claims on terms that include a sentence different than that imposed at trial (1) prior to adjudication,[1] and (2) after adjudication but prior to resolution on appeal.[2] There are sound policy reasons that our system should permit prosecutors and petitioners for post-conviction relief to agree to resolve post-conviction relief claims, including facilitating resolution of meritorious, difficult-to-defend, and otherwise complex post-conviction issues; making efficient use of limited resources; and promoting judicial economy. To further these policies, we affirm the authority of prosecutors and petitioners for post-conviction relief to agree to resolve post-conviction relief claims on terms that include a sentence different than that imposed at trial; and we affirm the authority of post-conviction courts to accept such agreements.

### B

■■ Likely because it would be rare for there to be appeals from such agreements, our appellate courts have not addressed whether there are limitations on their terms. The specific question presented to us by this case is whether it was permissible for the State to agree to an 80–year executed time sentence when that sentence was not provided for by statute when Dobeski committed his 1964 crimes.

■■ As a general rule, the law in effect at the time a defendant committed a crime controls his or her sentencing. *See Smith v. State,* 675 N.E.2d 693, 695 (Ind. 1996); *Watford v. State,* 270 Ind. 262, 264, 384 N.E.2d 1030, 1032–33 (1979).[3] On August 31, 1964, when Dobeski committed these murders, the only penalties prescribed by statute for first-degree murder were death and life imprisonment. *See* Burns Ind.Stat.Ann. § 10–3401 (1956 Replacement). Reasoning from the general rule, the Court of Appeals concluded that the post-conviction court was without au-

---

1. See, for example, *State ex. rel. Woodford v. Marion Superior Court,* 655 N.E.2d 63, 64–65 (Ind.1995), where a post-conviction relief petitioner and an outgoing prosecutor had submitted an agreement asking the court to set aside petitioner's life sentence and impose a sentence of 50 years with ten years suspended to probation. The issue in *Woodford* was whether the petition needed authorization under Ind. Post–Conviction Rule 1(10). Neither this Court nor any of the parties challenged the ability of the State and the petitioner to negotiate such an agreement, or the post-conviction court's authority to accept or reject the agreement.

2. *See, e.g., McCollum v. State,* No. 45S00–9403–PD–228, CCS entry 4/29/99, at p. 6; and *Townsend v. State,* No. 45S00–9403–PD–227, CCS entry 4/29/99, at p. 7 (Prisoners who both were sentenced to death for two murders filed separate post-conviction petitions which were denied; petitioners appealed the denial to this Court; prior to our issuing of a decision in either case, the post-conviction court accepted agreements between both petitioners and the State to resentence each petitioner to two consecutive 60–year sentences).

3. An exception—not applicable in this case— to this rule occurs when the legislature amends the statute that was in force at the time of the offense, the amendment takes effect prior to sentencing, and the amendment provides for an ameliorative penalty. *See Elkins v. State,* 659 N.E.2d 563, 565 (Ind.Ct. App.1995).

thority to approve the settlement agreement because it contained a sentence not prescribed by § 10–3401.

We will return to this general rule but first examine the law in effect when Dobeski committed his crimes—and find that Indiana's sentencing regime was fundamentally different in 1964 than it is today.

### C–1

As the Court of Appeals observed, the *determinate* sentencing system in effect today was enacted by the legislature in 1977. *See Johnston,* 702 N.E.2d at 1090; Pub.L.No. 340 § 150 (1977). That legislation reflected the conclusion of the commission studying the penal code and the General Assembly agreed that the criminal code's then-existing *indeterminate* sentencing provisions and procedures should be eliminated. *See* William A. Kerr, *Forward: Indiana's Bicentennial Criminal Code,* 10 Ind.L.Rev. 1, 28 (1976); *see also Criminal Offenses, Penalties, and Procedures Study Committee Meeting Minutes* 2 (Apr. 29, 1964) (on file with the Indiana State Archives) (documenting that the Model Sentencing Act subcommittee recommended that the parole board be required by statute to establish by administrative decree minimum terms to be served before a prisoner is eligible for parole); *Criminal Code Study Commission Minutes* 2 (Apr. 25, 1962) (on file with the Indiana State Archives) (documenting that, after hearing commentary from interested parties and considering the issues over time, the committee unanimously approved a determinate sentencing law and agreed to prepare the appropriate legislation).

Under the new code, the legislature adopted fixed terms of years for crimes, including murder, while limiting and clari-

fying parole options. *See* Ind. Code §§ 35–50–2–3 and 35–50–6–1 (Burns Supp. 1977). The final 1977 code changes collapsed the distinction between first and second-degree murder, establishing one class of murder that was punishable by imprisonment of a determinate period of 30 to 60 years, with a presumptive or standard sentence of 40 years. *See* Ind. Code § 35–50–2–3 (Burns Supp.1977); *see also* William A. Kerr, *Forward: Indiana's New and Revised Criminal Code,* 11 Ind. L.Rev. 1, 8 (1978); Kerr, *Forward: Indiana's Bicentennial Criminal Code,* 10 Ind. L.Rev. 1, 13. When a person is sentenced for murder under today's code, a fixed number of years is specified in the sentencing order.

### C–2

A prisoner whose crime was committed before the 1977 code took effect could not benefit from it. It expressly includes a savings clause precluding application of the new sentencing scheme to penalties incurred before October 1, 1977.[4] Therefore, neither the post 1977 criminal code, nor the current sentence modification provisions at Ind. Code § 35–38–1–17 control our analysis of this case because they were not in effect at the time Dobeski committed his crimes in 1964. Instead, we must analyze the 1989 agreement between Dobeski and the prosecutor's office in the context of the sentencing system in effect at the time Dobeski committed his crimes—to repeat, a fundamentally different system from today's.

As the authorities cited above indicate, the pre–1977 criminal code provided for an *indeterminate* rather than a determinate sentencing scheme. As such, the amount of time a prisoner *actually* served was

---

4. The savings clause provides:
   (a) Neither this act nor Acts 1976, P.L. 148 affects:
      (1) rights or liabilities accrued;
      (2) penalties incurred; or
      (3) proceedings begun
      before October 1, 1977. Those rights, liabilities, and proceedings are continued,
   and penalties shall be imposed and enforced as if this Act and Acts 1976, P.L. 148 had not been enacted.
   (b) An offense committed before October 1, 1977, under a law repealed by Acts 1976, P.L. 148 shall be prosecuted and remains punishable under the repealed law.
   Pub.L.No. 341 § 150 (1977).

determined under both formal and informal parole procedures and rules.

In fact, from 1961 until the criminal code was revised in 1977, the Indiana parole board was "authorized to release on parole, pursuant to the laws of the state of Indiana, any person confined in any penal or correctional institution in this state except persons under sentence of death." Burns Ind.Stat.Ann. § 13–1609 (Supp. 1961) (originally enacted as Pub.L.No. 343 § 9 (1961)). The parole board was to

> .... conduct hearings at each correctional institution at such time as may be necessary for a full study of the cases of prisoners eligible for release on parole and to determine when and under what conditions and to whom parole may be granted....

*Id.*

### C–3

Viewing the pre–1977 sentencing and parole statutes as a whole, it is clear that even though two consecutive life sentences were imposed on Dobeski, the period of confinement was indeterminate, subject to adjustment through the parole process. Said differently, the pre–1977 sentencing and parole statutes could have operated to provide that Dobeski's original period of confinement would be modified to one equal to that provided in the settlement agreement.

Our review of the parole board's minutes from 1962–1973 indicates that parole was authorized for 273 inmates serving life sentences at the Indiana State Prison during those years. The average term served by those 273 prisoners before parole was authorized was 19.4 years; only five of them served 40 years or more before parole was authorized.[5] *Minutes of the Indiana Pa-*

*role Board* 1962–1973 (on file with the Indiana State Archives).

### D

We recognize and adhere to the general rule that the law in effect at the time a defendant committed a crime controls his or her sentencing. But none of the cases in which this rule has been cited[6] involve a court considering an agreement tendered jointly by the State and a petitioner for post-conviction relief that, among other things, includes a sentence different than that imposed at trial. The question remains whether it is a rule that prevents us from affirming the agreement the State made with Dobeski.

We conclude that the State should be held to the agreement it made with Dobeski in 1989 for the following reasons. First, affirming the agreement furthers as a general matter the interests identified above—facilitating resolution of meritorious, difficult-to-defend, and otherwise complex post-conviction issues; making efficient use of limited resources; and promoting judicial economy. Some if not all of these considerations were undoubtedly at work in this case. Second, as part of the agreement, Dobeski dismissed his claim for post-conviction relief with prejudice. We see reviving this claim now, almost a decade later, highly problematic for all concerned. Third, the original life sentences had been imposed under an indeterminate sentencing regime that expressly provided for later review. Fourth, practice under the indeterminate sentencing system regularly authorized parole from life sentences after periods of time much less than the revised sentence in this case. Fifth, the sentence provided for in the agreement here corresponds to consecutive presumptive terms under the sen-

---

5. The minutes do not reflect cases in which parole was rejected for prisoners serving life sentences. A study of parole in Indiana indicates that in 1965, 50.8% of all inmates at the Indiana State Prison had their parole requests denied or continued; 36.9% were paroled to supervision; 7.5% were paroled and dis-

charged; and 4.8% were paroled on other terms. National Council on Crime and Delinquency, *Corrections in Indiana* 8.10 (1967).

6. *See, e.g., Smith,* 675 N.E.2d at 695; *Watford,* 270 Ind. at 264, 384 N.E.2d at 1032.

tencing regime in effect at the time the agreement was approved.[7]

We recognize that this Court has previously said that it requires an exercise of administrative and not judicial power to reduce indeterminate sentences. *Dowd v. Basham,* 233 Ind. 207, 212, 116 N.E.2d 632, 635 (1954). But that was in the context of a prisoner's attempt to have his sentence reduced as against opposition from the State. Here, the administrative branch of government acting through the county prosecutor, as part of an effort to resolve and conclude litigation, sought court approval of an agreement that, among other things, included a sentence different than that imposed at trial. We hold it to be within the judicial power to dismiss the litigation on this basis.

### Conclusion

Having previously granted transfer, we now (1) adopt and incorporate by reference Part I of the Court of Appeals's opinion denying the Johnstons' legal standing to intervene; and (2) affirm the post-conviction court's acceptance of the 1989 agreement between the State and Dobeski.

DICKSON, BOEHM, and RUCKER, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

SHEPARD, Chief Justice, dissenting.

It has long been bedrock law that the sentence for a crime is the sentence in existence when the crime was committed, unless it is apparent that the legislature intended to ameliorate the criminal law and give perpetrators a retroactive benefit. *See, e.g., Taylor v. State,* 681 N.E.2d 1105, 1112 (Ind.1997). As the majority indicates, the General Assembly expressly precluded application of the 1977 sentencing scheme to persons who committed crimes before October 1, 1977. Op. at 124.

In *Landaw v. State,* 258 Ind. 67, 68, 279 N.E.2d 230, 231 (1972) we held that "[i]t is clearly within the sole power of the Legislature to fix the punishment for crimes, and this Court has no power to alter that legislative determination." We have specifically upheld the constitutional authority of the legislature to make sentencing changes prospective only. *Parsley v. State,* 273 Ind. 46, 401 N.E.2d 1360 (1980), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980).

I conclude that the trial court therefore had no authority to modify Dobeski's sentence in a manner that ignored the legislature's decision to make the 1977 sentencing scheme prospective only. The fact that the court acted upon an agreement of the parties seems to me not to affect the court's power. In effect, the trial court granted parole, but, of course, parole is not within a court's domain.

I think today's decision both impinges on the distribution of powers dictated by the Indiana Constitution and untethers us from long-established law. I am concerned about where this arrow, once shot in the air, may come to ground.

7. Because of the presence of all of these factors here, we hold this situation distinct from that in challenges to plea agreements in cases

like *Lighty v. State,* 727 N.E.2d 1094 (Ind.Ct. App.2000) and *Sinn v. State,* 609 N.E.2d 434 (Ind.Ct.App.1993).