# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**J. KEVIN KING**
**PETER CAMPBELL KING**
Cline, King & King, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE
STATE OF INDIANA:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
PAIGE A. DEVLIN:

**DENNIS R. BROWN**
**DENNIS R. GEISLEMAN**
Geisleman & Brown, LLP
Fort Wayne, Indiana



FILED
Jun 13 2014, 10:14 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

RANDOLPH KELLEY,                    )
                                    )
   Appellant,                    )
                                    )
       vs.                    )     No.  02A03-1308-CR-329
                                    )
STATE OF INDIANA and PAIGE A. DEVLIN,   )
                                    )
   Appellees.                    )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1104-FD-513

**June 13, 2014**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Randolph Kelley appeals from the trial court's order awarding Paige A. Devlin a $50,000 credit toward a restitution order entered in Kelley's favor. Concluding that the decision to award such a credit was within the trial court's discretion, we affirm.[1]

In April 2011, Devlin was driving while intoxicated when she rear-ended Kelley's vehicle. Kelley was seriously injured as a result of the collision. Devlin subsequently pleaded guilty to class D felony operating a vehicle while intoxicated causing serious bodily injury and class C misdemeanor illegal consumption of an alcoholic beverage. As part of her sentence, Devlin was ordered to pay restitution to Kelley in the amount $59,974.87.

After the entry of the restitution order, Kelley initiated a civil suit against Devlin and his own underinsured motorist coverage provider. Eventually, Kelley agreed to settle the civil matter with Devlin for her $50,000 insurance policy limits. Shortly thereafter, a dispute arose concerning the language of the release and its effect on the previously entered restitution order. Kelley sought the inclusion of language within the release specifically providing that the settlement would have no impact on the restitution order. Devlin refused to include such language, arguing that Kelley had not bargained for it. Devlin eventually filed a motion to enforce the settlement agreement. A hearing was held before the civil court, at which Devlin argued that Kelley had not bargained for the inclusion of limiting language concerning the restitution order in the settlement agreement, and that in any event it was for the criminal court to determine what effect, if

---

[1] We held oral argument in this matter at Shortridge Magnet High School for Law and Public Policy on May 14, 2014. We thank the school, its staff, and its students for their hospitality, and we commend counsel for the quality of their presentations.

2

any, the settlement would have on the restitution order. The civil court ultimately ordered Kelley to execute a general release providing that he released Devlin "from any and all claims, demands, actions, and causes of action of each and every kind, whatsoever" relating to the car accident. *Appellee Paige A. Devlin's Appendix* at 1. The civil court specifically made "no determination whatsoever as to the effect of this settlement of the civil case upon the Order of Restitution" in the criminal matter and concluded that "whether or not any or all of this is a credit against the restitution is something to be determined by Judge Gull in the Criminal Division and not by this Court." *Appellant's Appendix* at 75. Kelley executed the release as ordered and did not appeal the civil court's decision.

Thereafter, Kelley filed a petition for proceedings supplemental in the criminal matter, seeking to collect on the restitution order. Devlin filed a response arguing that she was entitled to a credit toward the restitution order in the amount of $50,000 based on the civil settlement and release. A hearing was held on July 23, 2013, at which Kelley, Devlin, and the State all appeared. The State agreed that Devlin should receive a credit toward the restitution order. At the conclusion of the evidence and argument, the criminal court concluded that Kelley had signed an unambiguous release and that it was "only fair" to credit the $50,000 civil judgment against the restitution order, leaving Devlin with an outstanding restitution order in the amount of approximately $9,974.87. *Transcript* at 35. Kelley now appeals.[2]

---

[2] The State has filed a short appellate brief in this matter "to notify this Court of its non-involvement." *Appellee State of Indiana's Brief* at 5. The State disclaims any interest in this matter based on its

Before proceeding to the merits of Kelley's appeal, we address Devlin's argument that Kelley lacks standing to challenge the trial court's order because "the State and the defendant are the only two parties with standing in a criminal sentencing proceeding." *Appellee's Brief* at 9. Our Supreme Court has explained that "an order of restitution is as much a part of a criminal sentence as a fine or other penalty." *Haltom v. State*, 832 N.E.2d 969, 971 (Ind. 2005) (quoting *Miller v. State*, 502 N.E.2d 92, 95 (Ind. 1986)). The Court has also explained that the State and the defendant are the only two parties with standing in a criminal sentencing proceeding. *Haltom v. State*, 832 N.E.2d 969. *See also Johnston v. State*, 702 N.E.2d 1085 (Ind. Ct. App. 1998) (explaining that victims' family had no standing to contest a criminal court's modification of defendant's sentence because the defendant and the State are the only two parties with standing), *trans. granted, adopted in relevant part in Johnston v. Dobeski*, 739 N.E.2d 121 (Ind. 2000).

We have serious doubts concerning Kelley's standing in this matter. Except in certain limited circumstances not applicable here, a trial court is not required to enter a restitution order.[3] In other words, a victim has no right to receive restitution in a criminal

---

conclusion that this appeal "does not challenge the imposition or modification of a restitution order," but instead involves a challenge "to a trial court's determination that the order is partially satisfied." *Id.* at 6. We are less convinced than the State that the criminal court's decision to grant a credit toward the restitution order could not be characterized as a sentence reduction requiring the State's approval. *See* Ind. Code Ann. § 35-38-1-17 (West, Westlaw current with all legislation of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through May 1, 2014) (providing that "[i]f more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence . . . the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney"). After all, our Supreme Court has noted that restitution is a part of a criminal sentence. *See Haltom v. State*, 832 N.E.2d 969 (Ind. 2005). Because the parties do not raise the issue, we do not base our decision on the application of this statute. Nevertheless, we note that in this case, the State agreed that Devlin should receive a credit toward the restitution order.

[3] *See* Ind. Code Ann. § 35-50-5-3(k) (West, Westlaw current with all legislation of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through May 1, 2014) (providing that the trial

matter. If the criminal court in this case had declined to enter a restitution order in the first instance, it is clear that Kelley would have no authority to intervene in an attempt to compel it to do so. Although this court has held that a victim in whose favor a restitution order has been entered may commence proceedings supplemental to collect on an existing restitution order, *Wininger v. Purdue Univ.*, 666 N.E.2d 455 (Ind. Ct. App. 1996) (citing I.C. § 35-50-5-3(b) (providing that a restitution order is a judgment lien that may be enforced in the same manner as a judgment lien created in a civil proceeding)), we have never held that this right includes the authority to challenge a criminal court's discretionary rulings concerning the amount of a restitution order or its decisions to modify such an order.

We note, however, that Devlin has raised her standing argument for the first time on appeal. Indeed, when the State questioned Kelley's standing before the criminal court, Devlin's counsel stated that he had "no objection to [Kelley] doing a Proceeding Supplemental." *Transcript* at 4. On appeal, Devlin claims she conceded only that Kelley had standing to institute proceedings to collect an existing restitution order, but not to challenge that trial court's decision to grant an offset or modification of such an order. But Devlin drew no such distinction before the trial court and never suggested that Kelley's standing was so limited. This court has acknowledged that the issue of standing may be waived. *See Burcham v. Metro. Bd. of Zoning Appeals Div. I of Marion Cnty.*,

court "shall order" a person convicted of a human and sexual trafficking offense to pay restitution); I.C. § 35-50-5-3(l), (m) (providing that a trial court "shall order" a person convicted of manufacturing methamphetamine or marijuana on the property of another person without that person's consent to pay liquidated damages to the property owner).

883 N.E.2d 204 (Ind. Ct. App. 2008); *Ind. Port Comm'n v. Consol. Grain & Barge Co.*, 701 N.E.2d 882 (Ind. Ct. App. 1998), *trans. denied*. Accordingly, we conclude that Devlin has waived appellate review of her argument concerning Kelley's standing.

Next, we address the parties' disagreement concerning the appropriate standard of review. Kelley argues that "the standard of review is *de novo* as it requires the interpretation of the restitution statute in a criminal matter." *Appellant's Brief* at 5. The State, on the other hand, argues that we should apply an abuse-of-discretion standard because this case involves a restitution order. Under the circumstances of this case, the distinction is of little consequence. This court has repeatedly acknowledged that decisions concerning an award of restitution are reviewed for an abuse of discretion and that questions of statutory interpretation are reviewed *de novo*. *See, e.g., Kimbrough v. State*, 911 N.E.2d 621 (Ind. Ct. App. 2009) (noting that this court will not reverse a restitution order unless the trial court has abused its discretion); *Kaser v. Barker*, 811 N.E.2d 930 (Ind. Ct. App. 2004) (noting that we review questions of statutory construction *de novo* because the interpretation of a statute is a question of law). If a trial court misinterprets or misapplies a statute relating to a restitution order, it necessarily abuses its discretion. *Myers v. State*, 848 N.E.2d 1108 (Ind. Ct. App. 2006).

With that in mind, we turn to the question presented: Did the trial court commit reversible error in crediting the $50,000 civil settlement toward the restitution order? I.C. § 35-50-5-3(a) provides, in relevant part, that "in addition to any sentence imposed under this article for a felony or misdemeanor, the court may . . . order the person to make

restitution to the victim of the crime[.]" When such an order is entered, it must be based upon a consideration of:

> (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);
> (2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;
> (3) the cost of medical laboratory tests to determine if the crime has caused the victim to contract a disease or other medical condition;
> (4) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and
> (5) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

*Id.* A restitution order must reflect a loss sustained by the victim as a direct and immediate result of the defendant's criminal acts, and the trial court may consider only expenses incurred by the victim prior to the date of sentencing. *Rich v. State*, 890 N.E.2d 44 (Ind. Ct. App. 2008), *trans. denied*.

With respect to the effect of a restitution order on a civil action by the victim, the restitution statute provides as follows:

> An order of restitution . . . does not bar a civil action for:
> (1) damages that the court did not require the person to pay to the victim under the restitution order but arise from an injury or property damage that is the basis of restitution ordered by the court; and
> (2) other damages suffered by the victim.

Although the restitution statute makes it clear that the entry of a restitution order does not prevent a victim from pursuing a civil action to recover damages not covered by the restitution order, the statute does not address the effect of a release of claims executed as part of a civil settlement on a restitution order. Our Supreme Court discussed this issue in *Haltom v. State*, 832 N.E.2d 969. In that case, the victim entered into a civil settlement

7

agreement with the defendant's insurer before the criminal trial. As part of the settlement, the victim executed a release of all claims against the defendant. Thereafter, the defendant pleaded guilty to a drunk-driving offense, and despite the release executed by the victim as part of the civil proceedings, the criminal court ordered the defendant to pay restitution.

On appeal, the defendant argued that the release executed in the civil action precluded the trial court from ordering restitution in the criminal matter. Our Supreme Court explained that the primary purpose of restitution is to "vindicate the rights of society[.]" *Haltom v. State*, 832 N.E.2d at 971. Although such orders also serve to compensate the victim, this is merely an "ancillary result" of their primary function as criminal penalties. *Id.* Thus, the court reasoned that "allowing a civil settlement to preclude restitution altogether would infringe upon the State's power to administer criminal punishment." *Id.* at 972. The court explained, however, that sentencing courts are free to consider civil settlements when making decisions concerning restitution. In sum, "[o]ur criminal courts are permitted to take note of these agreements in deciding whether to order restitution and in what amount, but these agreements in no way preclude a criminal court from ordering restitution when appropriate under statute." *Id.*; *see also Myers v. State*, 848 N.E.2d at 1110 (noting that, under *Haltom*, "while criminal courts are *permitted* to take note of agreements entered into in civil court, such settlements do not prevent a criminal court from ordering restitution" (emphasis in original)).[4]

---

[4] In *Myers v. State*, this court held that while civil settlements do not necessarily preclude the entry of restitution orders, "elementary principles of tort law command that a plaintiff is entitled to only one

8

We note that the factual circumstances of this case are slightly different than those presented in *Haltom*. In *Haltom*, the civil settlement and release predated the restitution order. Here, the reverse is true—the restitution order was entered before the parties reached the settlement agreement, and the criminal court subsequently awarded Devlin a credit based on the payment of the civil judgment. Given our Supreme Court's paramount concern in *Haltom* with preserving the criminal court's discretion with respect to administering criminal punishments, including restitution, we conclude that this distinction does not alter the outcome. The *Haltom* court made it clear that the decision whether to take a civil settlement into account falls within the discretion of the sentencing court, and Kelley has made no argument that we should circumscribe the trial court's discretion in this regard based solely on the timing of the orders.

In this case, Kelley signed a settlement agreement that clearly and unambiguously released Devlin "from any and all claims, demands, actions, and causes of action of each and every kind, whatsoever" relating to the car accident.[5] *Appellee Paige A. Devlin's Appendix* at 1. Under *Haltom*, the criminal court was free to disregard the civil

---

recovery for a wrong. Thus, payments that are made in partial satisfaction of a claim must be credited against the remaining liability to prevent a double recovery." 848 N.E.2d at 1110. Kelley argues, and Devlin implicitly concedes, that the restitution order did not cover all of Kelley's medical expenses or any of his pain and suffering. Thus, Devlin makes no argument that allowing Kelley to collect on both the civil settlement and the restitution order would result in an impermissible double recovery.

[5] Because the release was clear and unambiguous, we will not look beyond its terms to determine the parties' intent. *See Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006) (explaining that Indiana follows the "four corners rule," which provides that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction" (citation omitted)). To the extent Kelley argues that the language of settlement agreement did not accurately reflect the parties' intent, his proper course of action was to appeal the civil court's order requiring him to execute the release. He did not do so, and he may not now use the criminal proceedings to mount a collateral attack on the civil court's ruling.

settlement, but it was by no means required to do so. It was well within the criminal court's discretion to grant Devlin a credit toward the restitution order based on the civil settlement.

Finally, we address Kelley's argument that the criminal court's decision to award Devlin a credit toward the restitution order was against public policy. Citing *Hartford Acc. & Indem. Co. v. Dana Corp*., 690 N.E.2d 285 (Ind. Ct. App. 1997), *trans. denied*, Kelley argues that it is against public policy to allow an insurer to pay for a portion of an insured's criminal fees and penalties. Kelley's cited case, however, does not support this proposition. In *Hartford*, this court considered the meaning of the term "damages" as used in an insurance policy and concluded that the term encompassed environmental cleanup and response costs. Although the court noted in passing that the term would not include fines and penalties, it made no mention of public policy. Instead, it cited a Missouri case in which the court noted that fines and penalties are not included within the ordinary meaning of the term "damages" as used in an insurance policy because they are not "compensation or reparation for an injury; rather, [they are sums] imposed as punishment." *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 511 (Mo. 1997). The Missouri court's decision in this regard was based on contract interpretation, not public policy. Simply put, Kelley has cited no authority to support his argument that "Indiana has held that it is against public policy for insurance policies to pay for an insured's fines and penalties." *Appellee's Brief* at 16.

The civil settlement at issue in *Haltom* was paid by the defendant's insurer; nevertheless, our Supreme Court held that the criminal court had discretion to consider

the settlement in making its decision concerning restitution. To the extent that public policy might prevent Devlin from insuring against her own criminal acts, this argument would be a defense to coverage available to Devlin's insurer in the civil context.[6] It does not provide a basis for Kelley, a stranger to the insurance contract, to challenge the criminal court's sentencing decisions. For all of these reasons, we conclude that the criminal court did not commit reversible error when it granted Devlin a credit toward the restitution order based on her insurer's payment of damages pursuant to a civil settlement.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.

---

[6] Indeed, *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 595 N.Y.S.2d 999 (N.Y. Sup. Ct. 1993), which Kelley cites in his reply brief, addressed whether an insurer was required to indemnify an insured for criminal fines and penalties, a question very different than the one presented in this case.