

**FILED**

Apr 12 2017, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan R. Deenik
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C.H., <br> *Appellant-Petitioner,* <br><br> v. <br><br> A.R., <br> *Appellee-Respondent.* | April 12, 2017 <br><br> Court of Appeals Case No. <br> 29A05-1607-PO-1625 <br><br> Appeal from the Hamilton Circuit Court <br><br> The Honorable Paul A. Felix, Judge <br><br> The Honorable Todd L. Ruetz, Magistrate <br><br> Trial Court Cause No. <br> 29C01-1504-PO-2994 |

**Pyle, Judge.**

[1]     C.H. ("Grandmother") appeals the trial court's order that dismissed her protective order petition and its ex parte protective order that she sought against A.R. ("Mother") for the protection of Mother's son, H.L. ("Son"). Grandmother also appeals the trial court's order granting Mother's petition for attorney fees. Grandmother argues that the trial court erred by dismissing her

protective order petition based on a finding that she lacked standing to file it and by ordering her to pay Mother's attorney fees based on a finding of bad faith. Finding no error, we affirm the trial court's order dismissing Grandmother's petition and its order granting Mother's request for attorney fees.

[2] We affirm.

## Issues

> 1. Whether the trial court erred by dismissing Grandmother's petition for a protective order.
>
> 2. Whether the trial court erred by granting Mother's request for attorney fees.

## Facts

[3] Before delving into the facts, we pause to note that the record on appeal—most notably Grandmother's Appellant's Appendix—is scant in content, resulting in limited available facts. Contrary to Indiana Appellate Rule 50, Grandmother has failed to include in her Appellant's Appendix the vast majority of "pleadings and other documents from the Clerk's Record" that were part of this protective order proceeding. For example, she has failed to include a copy of her petition for a protective order that explained the basis or allegations supporting the petition. She also has failed to include the trial court's ex parte protection order. There were other pleadings filed and orders entered during the course of this proceeding—including a transfer of the case to Grant County and then a re-transfer back to Hamilton County—and Grandmother has not

included these pleadings in her Appendix. Additionally, as part of the hearings in this case, the trial court took judicial notice of the records from other proceedings involving Mother and Grandmother; however, these records have not been included in the record on appeal. Grandmother's failure to include these documents has required us to rely mainly upon the chronological case summary and the trial court's order on attorney fees to piece together the relevant facts of this case.[1]

[4] We now turn to the facts most favorable to the judgment. Mother is the mother of Son, who was born in September 1999. Mother was granted physical and legal custody of Son by a Grant Superior Court in a paternity proceeding filed in January 2000 under cause number 27D02-0001-JP-21 ("Grant County paternity case"). The father of Son is deceased.[2] Grandmother, who is the paternal grandmother of Son, obtained grandparent visitation rights after she intervened in the Grant County paternity case. The Grant Superior Court granted Grandmother and her husband visitation with Son for eight hours every other Saturday.

[5] In April 2015, Mother and Son, who was sixteen years old at that time, were living in Hamilton County. On April 12, 2015, "an altercation occurred"

---

[1] Moreover, contrary to Appellate Rule 46(A)(6)(a), Grandmother's recitation of some facts are not "supported by page references to the Record on Appeal or Appendix[.]"

[2] The record on appeal does not reveal when father died.

between Mother and Grandmother, and Son "attempted to intervene in the altercation." (App. 9).

[6] Subsequently, the State charged Mother with multiple charges, including battery against Grandmother and against Son, under cause number 29D03-1504-F6-3420 ("Hamilton County criminal case"). The trial court in the Hamilton County criminal case issued a no-contact order for Grandmother's protection, but it did not issue an order pertaining to Son. Additionally, the Department of Child Services ("DCS") investigated the incident. DCS "did not seek to detain or remove [Son] from Mother's care" nor did it file a child in need of services ("CHINS") petition. (App. 10). Nevertheless, Grandmother kept Son in her care and did not return him to Mother.

[7] On April 17, 2015, Grandmother filed, in Hamilton Circuit Court, a petition for a protective order against Mother on behalf of Son ("Hamilton County protective order case").[3] It is this petition that is at issue in this appeal. In her petition, Grandmother "reported the child's residence as the grandmother's residence" and did not inform the court that Mother had obtained custody of Son pursuant to a court order in the Grant County paternity case. (App. 10). That same day, the trial court issued an ex parte order for protection. The order "required Mother to stay away from . . . [G]randmother's residence where [Son] was located and stay away from [his] school." (App. 11).

---

[3] We are unaware of the exact allegations in the petition for the protective order because Grandmother did not include a copy of her petition in her Appendix. The details regarding the petition are found in the trial court's attorney fee order.

[8] A few days later, on April 20, 2015, Grandmother filed an emergency petition for the appointment of guardianship over Son. She filed this motion in Hamilton Superior Court under cause number 29D03-1504-GU-45 ("Hamilton County guardianship case"). In her petition, Grandmother did not inform the court that "Mother had been granted sole legal and physical custody of [Son]" in the Grant County paternity case. (App. 11).

[9] Immediately thereafter, Mother, who was then represented by counsel, filed petitions—in both Grant County and Hamilton County—in an effort to get Son back in her care. Specifically, Mother filed, in the Grant County paternity case, a "Motion for Sheriff Assistance for Immediate Return of Child to Hamilton County," a "Motion to Suspend Grandparent Visitation," and a "Motion to Transfer to Hamilton County." (App. 11).[4] In this Hamilton County protective order case, Mother filed a motion to dismiss the ex parte protection order, or, in the alternative, a request for an immediate hearing. Additionally, Mother filed, in the Hamilton County guardianship case, a motion to dismiss Grandmother's guardianship petition "due to the fact that a matter between the parties and [Son] was already pending" in the Grant County paternity case. (App. 11). In this motion, Mother alleged that Grandmother had "[e]ffectively stripped Mother of custody by denying her, as a custodial parent, the ability to contact and parent her child." (App. 11-12).

---

[4] Mother also filed a motion for attorney fees.

[10] On April 28, 2015, the trial court in the Hamilton County guardianship case, held a hearing and then entered an order dismissing Grandmother's guardianship petition. The trial court's dismissal was "due to the Grant Superior Court having custody jurisdiction over [Son] by its paternity case." (App. 12). After the dismissal, Grandmother "continued with the Ex Parte Order for Protection and did not return [Son] to Mother's care." (App. 12).

[11] The following day, the Hamilton Circuit Court transferred jurisdiction of this Hamilton County protective order case to the Grant Superior Court for a hearing in conjunction with the Grant County paternity case. Grandmother then filed a petition to modify custody in that paternity case.

[12] Thereafter, on May 6, 2015, following an agreement reached in a telephonic attorney conference, the Grant Superior Court transferred the paternity case to Hamilton County under cause number 29C01-1505-JP-659 ("Hamilton County paternity case") and transferred the protective order case back under its original Hamilton County cause number. Grandmother continued to maintain control over Son.

[13] Meanwhile, on September 25, 2015, Mother was acquitted, following a jury trial, of the battery charge against Son and convicted of the battery charge against Grandmother. Grandmother "continued to deprive Mother of custody over [Son] by the Ex Parte Order for Protection." (App. 13).

[14] Immediately thereafter, on September 28, 2015, Mother filed a pro se motion to dismiss the ex parte protective order and a request for a hearing in this

Hamilton County protective order case. Grandmother filed a response, contending that Mother's motion should be denied without a hearing because Mother had not filed her request for a hearing within thirty days of the ex parte order.

[15] On February 10, 2016, the trial court held a hearing on Mother's motion to dismiss. At the beginning of the hearing, the trial court advised that it had reviewed the motions filed in the Grant County paternity case that were transferred to and pending in the Hamilton County paternity case. The trial court also took judicial notice of the records from Mother's Hamilton County criminal proceeding and the Hamilton County guardianship case.[5]

[16] The trial court asked the parties to provide legal arguments as to whether Grandmother had standing under the protective order statute to seek a protective order for Son and whether the trial court had jurisdiction to enter an ex parte protective order. In response, Mother argued that she had had "sole custody" of Son since 2000, that Grandmother had filed the petition for the protective order after DCS had investigated and "unsubstantiated" any claim against Mother, and that Grandmother had misstated Son's residence on the petition by stating that Son lived with Grandmother. (Tr. 8, 10).

---

[5] The records from these proceedings were not introduced as exhibits and have not been included in the record on appeal. We note that our supreme court, in *Horton v. State*, 51 N.E.3d 1154 (Ind. 2016), has discussed judicial notice under Indiana Evidence Rule 201 and the best practice for a trial court when taking judicial notice of a court record or file.

Grandmother acknowledged that DCS had not filed a CHINS petition and had not sought any court intervention to place Son with Grandmother. Grandmother, however, argued that she had standing to file a protective order on behalf of Son "because she [wa]s his grandmother and she was there to witness the events that occurred." (Tr. 9).

The trial court expressed its concern that Grandmother did not have standing and had sought the protective order "to bootleg around the intervention of police, CPS, guardianship, [and the] custody order on an ex parte basis[.]" (Tr. 13). The trial court also noted that, under the protective order statute— INDIANA CODE § 34-26-5-2(b)—only "a parent, a guardian, or another representative" is authorized to file a petition for a protective order on behalf of a minor. (Tr. 16).

Grandmother then asserted that she had standing to file a petition for a protective order on behalf of Son because she could be considered "another representative" under the protective order statute. She did not, however, provide any legal argument as to why she would fit into that category.

The trial court noted that there was only one definition of "representative" found in Title 34 of the INDIANA CODE. Specifically, the trial court referred to INDIANA CODE § 34-6-2-130 and the definition in INDIANA CODE § 34-18-2-25, which provides that a representative "means the spouse, parent, guardian, trustee, attorney, or other legal agent . . . ." [6] The trial court gave Grandmother

---

[6] This definition is contained in the Article pertaining to medical malpractice.

the opportunity to provide an alternative definition of representative that would be applicable to this protective order proceeding, but Grandmother's attorney stated that he had "not ever researched that" and "would need additional time[.]" (Tr. 17). Using the statutory definition as a reference, the trial court determined that the protective order statute contemplated that "another representative" would be someone who was a "legal representative" of the minor. (Tr. 17). The trial court then orally ordered that Son should be returned to Mother, and it dismissed the ex parte protection order, noting that "to leave the protection order in place is essentially leaving an unemancipated minor child with someone who has no legal custody or entitled to their care and control[.]" (Tr. 17).

[21] At the end of the hearing, Mother told the trial court that she was seeking reimbursement of the attorney fees she had incurred in relation to the ex parte order. The trial court acknowledged that Mother had previously requested those fees in a petition but informed her that it could not hear argument on that issue at that time. That same day, the trial court entered a general written order, granting Mother's motion to dismiss the petition for a protective order and terminating the ex parte protective order.

[22] Thereafter, Mother filed a motion to correct error, in which she argued that "she was entitled to attorney fees under IC [§] 34-52-1-1." (App. 14). The trial court interpreted Mother's motion as a request for a hearing on the attorney fees issue, and it held an attorney fee hearing on May 8, 2016. At this hearing, Mother appeared pro se, and Grandmother was represented by counsel.

During this hearing, the trial court took judicial notice of the records from this Hamilton County protective order case and the Hamilton County guardianship case. Mother requested $5,323.00 in attorney fees and presented receipts for payments made to her attorneys who represented her at the beginning of the proceeding. When the trial court asked Grandmother if she had any objection to the receipts, her attorney stated, "[i]f they're being admitted for the purpose of that's what [Mother] claimed she's paid to [her attorneys], I don't have an objection." (Tr. 27).

Subsequently, on June 14, 2016, the trial court entered an order, granting Mother's motion for attorney fees based on INDIANA CODE § 34-52-1-1, the General Recovery Rule. The trial court found, in relevant part, that Grandmother had litigated in bad faith. The trial court ordered Grandmother to pay $5,323.00 of Mother's attorney fees. Grandmother now appeals.

## Decision

Grandmother argues that the trial court erred by: (1) dismissing her petition for a protective order and terminating the ex parte protective order; and (2) granting Mother's request for attorney fees. We will address each argument in turn.

Before we address Grandmother's arguments, we note that Mother did not file an appellee's brief. When an appellee fails to submit an appellate brief, "'we need not undertake the burden of developing an argument on the [A]ppellee's behalf.'" *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting

*Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). Rather, "'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* (quoting *Trinity Homes*, 848 N.E.2d at 1068). "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks and citation omitted).

## 1. Dismissal of Ex Parte Protective Order

[27] We first address Grandmother's challenge to the trial court's dismissal of the ex parte protective order against Mother. Grandmother argues that the trial court erred by interpreting the meaning of "another representative" contained in the protective order statute, INDIANA CODE § 34-26-5-2(b). Specifically, Grandmother contends that the trial court erred by applying the definition of "representative" contained in Title 34 and by determining that Grandmother lacked standing to petition for a protective order on behalf of Son.

[28] Thus, we are called upon to review and interpret provisions of the protective order statute. "Statutory interpretation is a 'pure question of law,' which we review *de novo*." *J.D.M. v. State*, 68 N.E.3d 1073, 1077 (Ind. 2017) (quoting *N.L. v. State*, 989 N.E.2d 773, 777 (Ind. 2013)). *See also Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003) (explaining that "where, as here, the sole issue presented is the interpretation of a statute, we review the trial court's legal conclusions de novo"). "'Our first task when interpreting a statute is to give its words their plain meaning,' considering the text and structure of the statute as a whole." *J.D.M.*, 68 N.E.3d at 1077 (quoting *ESPN, Inc. v. Univ. of*

*Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016)). "Under the rules of statutory construction, when construing a statute, the legislature's definition of a word binds us." *Youngblood v. Jefferson Cty. Div. of Family & Children*, 838 N.E.2d 1164, 1171 (Ind. Ct. App. 2005), *trans. denied*.

[29] "Civil protective orders are governed by the Indiana Civil Protection Order Act ("CPOA")[.]" *Costello v. Zollman*, 51 N.E.3d 361, 364 (Ind. Ct. App. 2016), *trans. denied*. *See* IND. CODE §§ 34-26-5-1 *et seq*. Our legislature has explained that the CPOA "shall be construed to promote the . . . (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." I.C. § 34-26-5-1.

[30] "'Generally, a trial court has discretion to grant protective relief according to the terms of the CPOA.'" *Costello*, 51 N.E.3d at 367 (quoting *A.N. v. K.G.,* 10 N.E.3d 1270, 1271 (Ind. Ct. App. 2014)). Under the CPOA, certain individuals are authorized to file a protective order petition on behalf of a child. Specifically, INDIANA CODE § 34-26-5-2(b) provides that "[a] parent, a guardian, or *another representative* may file a petition for an order for protection on behalf of a child against a . . . family or household member who commits an act of domestic or family violence[.]" (Emphasis added).

[31] It is undisputed that Grandmother was neither a parent nor a guardian of Son at the time she filed a petition for a protective order on Son's behalf. The trial court determined that Grandmother did not qualify as "another representative"

and was, therefore, not authorized to file a petition on Son's behalf. In so doing, the trial court referred to the definition of "representative" contained in Title 34 of the INDIANA CODE. Specifically, Article 6 of Title 34 contains the definitions applicable to Title 34. INDIANA CODE § 34-6-2-130 provides that the term, "representative," "for purposes of IC 34-18, has the meaning set forth in IC [§] 34-18-2-25[,]" which then defines the term as "the spouse, parent, guardian, trustee, attorney, or other legal agent of the patient."

[32] On appeal, Grandmother argues that the trial court erred by applying the definition of "representative" found in INDIANA CODE § 34-18-2-25 because the definition applied to medical malpractice proceedings and not to protective order proceedings.

[33] Based on a review of the record on appeal, it appears that the trial court did not strictly apply this definition but, instead, used it as a reference point for determining the plain meaning of the term as used in the protective order statute. During the protective order hearing, the trial court noted that this definition of representative was the only definition contained in Title 34. The trial court also gave Grandmother the opportunity to provide an alternative definition of representative that would be applicable to this protective order proceeding, but she did not do so. Using the definition as a reference, the trial court determined that the protective order statute contemplated that "another representative" would be someone who was a "legal representative[.]" (Tr. 17).

[34] It is unclear why the legislature defined "representative" in Title 34 for its use in the medical malpractice statutes but did not specifically do so in relation to the protective order statute's use of "another representative." Nevertheless, we do not find any error in the trial court's use of the definition in INDIANA CODE § 34-18-2-25 as a reference point when determining the plain meaning of "another representative" in the protective order statute. *See* I.C. § 34-6-1-1 (providing that, "[e]xcept as otherwise provided, the definitions in this article apply throughout this title"). Furthermore, our supreme court has explained that under the rule of statutory construction of *noscitur a sociis*—which means "it is known by its associates"—the "meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases." *ESPN,* 62 N.E.3d at 1198 & 1198 n.5 (quoting BLACK'S LAW DICTIONARY 1224 (10th ed. 2014)). *See also Day v. State*, 57 N.E.3d 809, 814 (Ind. 2016) (explaining that, under *noscitur a sociis*, "if a statute contains a list, each word in that list should be understood in the same general sense"). Here, INDIANA CODE § 34-26-5-2(b) lists "another representative" in conjunction with "a parent" or "a guardian[,]" both of which have a legal right or relationship to the child; thus, the meaning of that term should be determined by these words that surround it. Considering the text and structure of the protective order statute as a whole, we conclude that the trial court did not err when it determined that Grandmother was not authorized to file a petition for a protective order on behalf of Son because she was not considered as "another representative."

## 2. Attorney Fees

Lastly, we turn to Grandmother's argument that the trial court erred by granting Mother's request for attorney fees.

A trial court's decision to award or deny attorney fees is "in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order." *Malachowski v. Bank One, Indpls., N.A.*, 682 N.E.2d 530, 533 (Ind. 1997) (quoting *Zaring v. Zaring*, 219 Ind. 514, 39 N.E.2d 734, 737 (1942)), *reh'g denied*. As we review Grandmother's challenge to the trial court's order awarding attorney fees, we observe that the trial court entered written findings and conclusions under Indiana Trial Rule 52(A) sua sponte. Where the trial court has entered such findings and conclusions, we apply a two-tiered standard of review. *See Marion Cty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 216 (Ind. 2012). "We first determine whether the evidence supports the findings and then whether the findings support the judgment." *Id.* We "shall not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). When determining whether a finding or judgment is clearly erroneous, we may neither reweigh the evidence nor reassess the credibility of the witnesses. *Sawmill Creek*, 964 N.E.2d at 216. "The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and any legitimate inferences therefrom." *Id.* at 216-17. A trial court's legal conclusions, however, are reviewed de novo. *Id.*

[37] "Generally, Indiana has consistently followed the American Rule in which both parties generally pay their own fees." *Dunno v. Rasmussen*, 980 N.E.2d 846, 849-50 (Ind. Ct. App. 2012) (citing *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 815-816 (Ind. 2012)). "In the absence of statutory authority or an agreement between the parties to the contrary—or an equitable exception—a prevailing party has no right to recover attorney fees from the opposition." *Id.*

[38] Here, the trial court granted Mother's request for attorney fees pursuant to INDIANA CODE § 34-52-1-1, which is known as the General Recovery Rule.[7] We have explained our standard of review for this statute as follows:

> The trial court's decision to award attorney fees under § 34-52-1-1 is subject to a multi-level review: the trial court's findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo. Purcell v. Old Nat. Bank*, 972 N.E.2d 835, 843 (Ind. 2012). Finally, the trial court's decision to award attorney fees and any amount thereof is reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. *Id.*

*Dunno*, 980 N.E.2d at 851.

---

[7] Grandmother argues that the trial court erred by awarding attorney fees to Mother under INDIANA CODE § 34-26-5-9, and she contends that it is unclear under what authority the trial court awarded attorney fees. We disagree. It is clear from the record on appeal that the trial court awarded attorney fees pursuant to INDIANA CODE § 34-52-1-1. Therefore, we will review the trial court's award of attorney fees under INDIANA CODE § 34-52-1-1.

The General Recovery Rule, INDIANA CODE § 34-52-1-1(b), provides as follows:

> In *any* civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) litigated the action in bad faith.

(Emphasis added).

The trial court awarded attorney fees to Mother after finding that Grandmother had acted in bad faith. "Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will." *Dunno*, 980 N.E.2d at 851 (citing *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 770 (Ind. Ct. App. 2011)).

In regard to its determination of bad faith, the trial court made the following relevant findings:

> 7. On April 17, 2015, [Grandmother] filed a Petition for an Order for Protection against Mother in favor of [Son]. In the Petition, [G]randmother reported the child's residence as the grandmother's residence . . . . The grandmother also failed to disclose that Mother is the custodial parent of the child as ordered by the Grant Superior Court No. 2 under cause number 27D0[2]-0001-JP-0021 or that [G]randmother had limited rights

of [grand] parenting time with the child in that cause. The disclosure of such important information, consistent with IC [§] 34-26-5-5, was required under paragraph 4 of the Petition for an Order for Protection which [G]randmother signed under oath. Paragraph 4 specifically requests "Please list all (divorce, protection orders, paternity, guardianship, criminal, juvenile, civil) involving the Respondent, yourself, or a child you have with the Respondent (*attach additional sheets of paper if necessary*)." The only disclosure the grandmother made was a CPS case number pending in Hamilton County. Additionally, there was no effort to comply with Trial Rule 65(B) of the Indiana Rules of Trial Procedure in effect[] circumventing a custody order and restraining Mother from her child without notice to Mother.

* * * * *

9. After securing the Ex Parte Order for Protection, the grandmother . . . filed a Verified Petition for Emergency Appointment of Temporary Guardian on April 20, 2015 under cause number 29D03-1504-GU-045. [Grandmother] did not allege in [her] Verified Petition that Mother had been granted sole legal and physical custody of the child under 27D02-0001-JP-0021. [Grandmother] knew the cause existed because [she] had intervened in that cause and [had] been granted grandparent visitation rights to the child. Notably, [Grandmother] filed the guardianship in Hamilton County recognizing the child's residence to be in Hamilton County but [G]randmother did not disclose the child's residence in Hamilton County in the Petition for an Order for Protection.

* * * * *

13. Following a hearing on the PETITION FOR EMERGENCY APPOINTMENT OF TEMPORARY GUARDIAN on April 28, 2015, under 29D03-1504-GU-045, Mother's request to dismiss the guardianship was granted due to the Grant Superior Court having custody jurisdiction over the child by its paternity case. Despite this dismissal, [Grandmother]

continued with the Ex Parte Order for Protection and did not return the child to Mother's care.

* * * * *

21. From April 17, 2015, when the Ex Parte Order was entered, to February 10, 2016, when the Ex Parte Order was dismissed, almost ten (10) months transpired during which time [Grandmother] kept the child from Mother with no order granting [Grandmother] custody and deprived Mother of her custody of the child as ordered by the Grant Superior Court No. 2.

* * * * *

24. The court finds that [Grandmother] secured the Ex Parte Order for Protection surreptitiously by failing to disclose to the court pertinent information regarding the child's residence and Mother's custody of the child, by failing to disclose the Grant Superior Court's jurisdiction over the child, and the limited grandparent visitation rights afforded by the Grant Superior Court. Such information regarding the Grant Superior Court's jurisdiction was also omitted from [Grandmother's] PETITION FOR EMERGENCY APPOINTMENT OF TEMPORARY GUARDIAN filed in Hamilton County under 29D03-1504-GU-045. [Grandmother was] advised by the court's ruling in 29D03-1504-GU-045 as early as April 28, 2015 that the Grant Superior Court No. 2 had jurisdiction over issues pertaining to the child's custody. Notwithstanding, [Grandmother] continued to deprive Mother of her custody of the child under the effect of the Ex Parte Order for Protection by seeking to vacate the hearing on Mother's request to dismiss it. [She] sought to do so on procedural grounds so as not to address the merits of [her] Petition for an Order of Protection even after Mother was found innocent of the charges against [Son].

25. The Ex Parte Order for Protection was not a custody order granting [Grandmother] custody of [Son]. . . .

* * * * *

29. The court finds that the acts and omissions of [Grandmother] in securing the Ex Parte Order for Protection without disclosing information as to the custody of the child and the continued pursuit of the Ex Parte Order for Protection in deprivation of Mother's custody rights constitutes bad faith. The court finds that [Grandmother's] actions to be more than bad judgment or mere negligence. The grandmother demonstrated a consciousness of wrongdoing by failing to provide pertinent information to the court, by ignoring procedural due process, by attempting to avoid a trial on the merits of her petition, and by pursuing the matter when it became clear that jurisdiction over matters of the child's custody belonged in the paternity case. Grandmother disregarded Mother's inherent, court ordered, and constitutional right to the custody of her child. Grandmother did so believing her protection of the child justified [G]randmother's means of doing so. In this same regard, the court finds the grandmother's testimony, that she simply followed the advice of others to file for an order for protection, and did so as directed by Prevail, to be reprehensible and unjustifiable.[8]

(App. 15, 16) (emphasis and footnote in original).

[42] Grandmother contends that the trial court erred by awarding attorney fees based upon her failure to disclose Son's address and Mother's court-ordered custody. She does not deny that she failed to disclose certain information on her petition for the protective order. Instead, she argues that the petition does not specifically request information relating to a custody order.[9] She also suggests that the trial court's findings are insufficient to support an award of

---

[8] Prevail is a victim advocacy agency.

[9] Again, Grandmother has not included a copy of her petition in her Appendix.

attorney fees because there was no specific finding that her failure to disclose information was done with ill will or a furtive design.

[43] Grandmother seems to argue that the trial court should not have found that she acted in bad faith because her petition for the protective order was done merely to protect or shield Son. The trial court, however, determined that Grandmother had effectively used the ex parte protective order as a sword by depriving Mother of her "inherent, court ordered, and constitutional right to the custody of her child." (App. 16). We will not reweigh the trial court's assessment of evidence or credibility of the witnesses. *See Sawmill Creek*, 964 N.E.2d at 216. Additionally, the trial court entered findings describing Grandmother's actions that it considered when determining bad faith, and it was not necessary for the trial court to use the definitional words of bad faith, i.e., ill will or furtive design, in addition to its specific finding of bad faith. Moreover, our review of the trial court's order reveals that the trial court's finding of bad faith was not based solely on Grandmother's failures to disclose information on her initial petition. Instead, the trial court took into consideration Grandmother's actions and omissions during the course of this proceeding, especially Grandmother's continued act of depriving Mother of custody of Son. Because the trial court's findings support its determination of bad faith, we conclude that the trial court did not abuse its discretion and affirm the trial court's award of attorney fees pursuant to INDIANA CODE § 34-52-1-1.

*See, e.g.*, *SJS Refractory*, 952 N.E.2d at 770 (affirming a trial court's award of attorney fees where the court's findings demonstrated bad faith).[10]

[44] Affirmed.

Baker, J., and Mathias, J., concur.

---

[10] Grandmother also contends that even if the trial court did not err by awarding attorney fees to Mother, the amount of the award was an abuse of discretion because Mother did not introduce an itemized statement of her fees paid. Grandmother, however, has waived any such argument because she made no such objection during the hearing. Indeed, when Mother presented receipts for payments made to her attorneys who represented her at the beginning of the protective order proceeding, the trial court asked Grandmother if she had any objection to the receipts, and Grandmother's attorney stated, "[i]f they're being admitted for the purpose of that's what [Mother] claimed she's paid to [her attorneys], I don't have an objection." (Tr. 27).