## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2020, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Harper
Harper & Harper, LLC
Valparaiso, Indiana

APPELLEE PRO SE

M.N.
Highland, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Brandon Dothager,

*Appellant-Respondent,*

v.

M.N.,

*Appellee-Petitioner*

November 13, 2020

Court of Appeals Case No.
20A-PO-608

Appeal from the Lake Superior
Court

The Honorable Cheryl Williamson,
Magistrate

Trial Court Cause No.
45D05-2001-PO-71

**Crone, Judge.**

# Case Summary

[1] Brandon Dothager appeals the trial court's issuance of an order of protection against him and in favor of M.N., arguing that there is insufficient evidence to support the issuance of the order. Concluding that the evidence is sufficient, we affirm the trial court's grant of the protective order in favor of M.N.

# Facts and Procedural History

[2] In late 2018 and 2019, then sixty-eight-year-old M.N. was the chair of the Democratic Party in Highland, Indiana, and twenty-six-year-old Dothager was a Democratic precinct committee member. On January 16, 2020, M.N. filed a petition for an order of protection against Dothager. M.N. alleged in the petition that Dothager had "committed repeated acts of harassment" against her. Appellant's App. Vol. 2 at 6.

[3] An evidentiary hearing was held on February 12, 2020. During the hearing, M.N. testified that she feared for her safety and had suffered great emotional distress and anxiety due to Dothager's repeated acts of harassment and intimidation. M.N. testified that Dothager had continually tried to bully and harass her into resigning her position as chair. M.N. stated that, in addition to sending her numerous threatening text messages on various dates accusing her of committing crimes and demanding her resignation, Dothager put written materials in her mailbox with the intent of harassing her and forcing her resignation, and on at least one occasion, he showed up at her house unannounced with the same intent. M.N. stated that, at a committee meeting

on January 24, 2019, Dothager "lunged" at her during a verbal altercation. Tr. Vol. 2 at 8. Highland Police Detective Ralph Potesta testified that, due to M.N.'s concerns regarding Dothager, the detective was called upon in his capacity as a police officer to provide security for committee meetings. Detective Potesta testified that he was present at the January 24 meeting, corroborated M.N.'s account of the lunging incident, and stated that he escorted Dothager out of the meeting due to his aggressive behavior. Detective Potesta testified that he was aware of, and had personally taken, several police reports indicating that Dothager had engaged in bullying and harassment of M.N. in person, on the telephone, and through text messaging. Detective Potesta opined that "it seem[ed] like [Dothager] want[ed] to take her position in the organization, and he was basically threatening her … that if she doesn't do what he wants, he was going to basically ruin her name." *Id*. at 25. When asked directly by the trial court whether, in his professional opinion, he believed that Dothager had been harassing M.N., Detective Potesta stated, "I do, especially since she asked him to stop and he continued." *Id*. at 42. Detective Potesta further stated that although Dothager did not make direct physical threats, he repeatedly threatened "to harm [M.N.] personally" and made threats "against her family." *Id*.

[4] Precinct committee member of thirty-five years, David Beanblossom, testified that the committee had never needed security at their meetings prior to Dothager's behavior toward M.N. Beanblossom recalled one meeting when Dothager "was interrupting" and "just wouldn't listen," and when M.N. tried

to maintain decorum for the meeting by instructing Dothager to stop, Dothager "got up and charged the front of the room" with a "scary" look on his face. *Id.* at 45. Beanblossom and another individual had to get up "to block [Dothager's] path" to M.N. *Id.* M.N. explained to the court that, contrary to Dothager's claims, she was not trying to keep him from attending future meetings and participating in the committee process. Instead, she stated that she wanted a protective order so that "he's not allowed to text me and harass me …. I don't want to be intimidated by him consistently because I don't resign my position." *Id.* at 78.

[5] At the conclusion of the hearing, the trial court acknowledged that while political debate often involves "push and pull between sometimes even members of the same party[,]" Dothager's behavior "really went beyond the democratic process." *Id.* at 81. Accordingly, the court concluded that M.N. had shown, by a preponderance of the evidence, that Dothager had engaged in repeated acts of harassment sufficient to justify the issuance of a protective order. Specifically, the order provides that Dothager is "enjoined from threatening to commit or committing acts of harassment" against M.N. and "prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with M.N., except that Dothager "may attend Democratic committee meetings and communication with [M.N.] at these meetings shall not be in violation of this order." Appealed Order at 2. Dothager is further "ordered to stay away from" M.N.'s residence. *Id.* This appeal ensued.

## Discussion and Decision

[6] The Indiana Civil Protection Order Act (CPOA) provides, "A person who is or has been subjected to harassment may file a petition for an order for protection against a person who has committed repeated acts of harassment against the petitioner." Ind. Code § 34-26-5-2(b). Harassment, as defined in the criminal statutes outlawing stalking, is "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. The term "repeated" as used in the anti-stalking statute "means more than once." *Falls v. State*, 131 N.E.3d 1288, 1290 (Ind. 2019) (citation omitted). "[I]mpermissible contact" includes, but is not limited to, "[f]ollowing or pursuing the victim" and "[c]ommunicating with the victim in person, in writing, by telephone, by telegraph, or through electronic means." Ind. Code § 35-45-10-3. The respondent must represent "a credible threat to the safety of a petitioner or a member of a petitioner's household." Ind. Code § 34-26-5-9(g).

[7] The CPOA and similar statutes are meant "to prohibit actions and behavior that cross the lines of civility and safety in the workplace, at home, and in the community." *Torres v. Ind. Family & Social Servs. Admin.*, 905 N.E.2d 24, 30 (Ind. Ct. App. 2009). We construe the CPOA "to promote the protection and safety of all victims of harassment in a fair, prompt, and effective manner." Ind. Code § 34-26-5-1. The petitioner for an order for protection bears the burden of proof and must prove entitlement to the order by a preponderance of the

evidence. *Costello v. Zollman*, 51 N.E.3d 361, 367 (Ind. Ct. App. 2016), *trans. denied*. A trial court has discretion to grant protective relief pursuant to the CPOA, and we neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. "We consider only the evidence of probative value and reasonable inferences that support the judgment." *Id*. We will reverse the grant or denial of a petition for an order of protection "only if we are convinced that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Id*.

[8]     Here, M.N. presented sufficient evidence to support the trial court's conclusion that Dothager's actions and behavior toward her personally crossed the lines of civility in the community to justify the issuance of a protective order. The record supports a finding, by a preponderance of the evidence, that Dothager engaged in conduct directed toward M.N. involving repeated and continuing impermissible contact, including communications with her in person and through electronic means, that would cause a reasonable person to suffer emotional distress, and that actually caused M.N. to suffer emotional distress, and that presents a credible threat to her safety. The entirety of Dothager's appellate argument is a request for us to reweigh the evidence and reassess witness credibility, and we may not. Dothager's arguments emphasize his own characterization of the facts that he was merely engaged in "firm" criticism of M.N.'s "leadership of the Party[,]" *see* Appellant's Br. at 14, 17, but we are obliged to accept the facts and reasonable inferences most favorable to the trial

court's judgment.[1] As observed by the trial court, it is clear that Dothager's hostility toward M.N. has greatly increased over time and he had begun "losing control" when it came to interacting with her. Tr. Vol. 2 at 81. The trial court agreed with M.N. that at least some restriction on Dothager's direct communications and contact with her, albeit minimal, was warranted in order to calm the waters before matters could further escalate. Dothager has failed to convince us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. Therefore, we affirm the court's issuance of the protective order.

[9] Affirmed.

Robb, J., and Brown, J., concur.

---

[1] We reject Dothager's suggestion that the protective order here is clearly erroneous because it improperly punishes him for exercising his First Amendment right to political speech. Although we observe that constitutionally protected activities cannot be deemed to be stalking or harassment, *S.B. v. Seymour Cmty. Schs.*, 97 N.E.3d 288, 296 (Ind. Ct. App. 2018) (citing Ind. Code §§ 35-45-10-1, -2)), *trans. denied* (2019), as explained above, considering only the facts most favorable to the trial court's judgment, we conclude that the order for protection here is based on Dothager's continuing harassment and threats directed to M.N. personally, which are clearly not constitutionally protected activities. *E.g., Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014). We will not revisit the trial court's apt conclusion that Dothager's repeated personal attacks directed toward M.N. "really went beyond the democratic process." Tr. Vol. 2 at 81.