

FILED

Sep 06 2018, 5:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Jonathan Hummel
Westville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jonathan Hummel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 6, 2018

Court of Appeals Case No.
75A03-1710-PC-2449

Appeal from the Starke Circuit
Court

The Honorable Michael A. Shurn,
Special Judge

Trial Court Cause No.
75C01-1512-PC-4

**May, Judge.**

[1]     Jonathan Hummel appeals the trial court's denial of his motion to correct error. Hummel's appeal arises after the appointment of a special judge to hear Hummel's post-conviction relief ("PCR") petition. The special judge first approved an agreement between the State and Hummel that modified

Hummel's sentence and called for dismissal of Hummel's PCR petition. Approximately forty-five minutes later, the special judge revoked his approval of the agreement and reinstated Hummel's PCR petition. Hummel filed a motion to correct error from the trial court's reversal of the judgment it had entered in his favor, which the trial court denied, leading to Hummel's notice of appeal.

[2] The State cross-appeals, asserting the denial of Hummel's motion to correct error was not a final, appealable order and, as Hummel did not fulfill the requirements for an interlocutory appeal, this appeal should be dismissed. As to the merits of Hummel's appeal, the State counters the special judge was correct in his determination he did not have the authority to modify the underlying sentence; thus, the special judge did not err when he denied Hummel's motion to correct error.

[3] We reverse and remand.

# Facts and Procedural History

[4] On April 23, 2012, Hummel pled guilty pursuant to a plea agreement to Class A felony dealing in a narcotic drug,[1] two counts of Class B felony robbery,[2] and

---

[1] Ind. Code § 35-48-4-1 (2006).

[2] Ind. Code § 35-42-5-1 (1984).

Class D felony criminal mischief [3] under cause number 75C01-1112-FA-16 ("FA-16"). In return the State dismissed all other pending cases. On May 17, 2012, the trial court sentenced Hummel to thirty-one and one-half years, as agreed in the plea agreement.

[5] On December 14, 2015, Hummel filed a petition for PCR. [4] On March 23, 2016, Hummel filed a motion for recusal of judge. On June 16, 2016, the trial court granted that motion and appointed Special Judge Michael Shurn.

[6] On February 24, 2017, at 1:30 p.m., at the evidentiary hearing on Hummel's petition, Hummel and the State indicated they had come to an agreement modifying Hummel's sentence to include Purposeful Incarceration. [5] In exchange, Hummel requested his petition for PCR be dismissed. Special Judge Shurn accepted the agreement and dismissed the PCR. Special Judge Shurn left the court room. At 2:22 p.m., approximately forty-five minutes later, Special Judge Shurn returned to the court room. The parties were still present. Special Judge Shurn informed the parties he had only been appointed to preside over the PCR case and that he did not have the authority to modify the sentence in

---

[3] Ind. Code § 35-43-1-2 (2006).

[4] This petition is not included in the record for review; thus, we do not know the grounds on which Hummel's petition asserted he was entitled to relief.

[5] Neither the parties nor the record before us indicates whether placement in Purposeful Incarceration was the basis for Hummel's petition for post-conviction relief or merely an ancillary negotiation. Additionally, the transcript for this hearing is not included in the record; thus, we rely on the Chronological Case Summary ("CCS") and the parties' briefs in this recitation of facts. The State and the CCS agree that Purposeful Incarceration was the substance of the agreement between Hummel and the State. Hummel, himself, does not elaborate on the terms of the agreement.

FA-16. Special Judge Shurn then revoked his approval of the agreement and reinstated Hummel's PCR case.

[7] On March 20, 2017, Hummel filed a motion to correct error alleging Special Judge Shurn did have the authority to accept the agreement between him and the State. In his motion, Hummel argued our Indiana Supreme Court had held that post-conviction courts had the authority to accept agreements made between the State and a petitioner. Hummel amended his motion on April 27, 2017, to add citation to a later case wherein the Court of Appeals held post-conviction courts have discretion to accept or reject an agreement that modifies the sentence in the underlying cause number.

[8] Special Judge Shurn conducted a hearing on June 28, 2017, and granted Hummel's request for ninety more days in which to present additional authority on his motion. Then, on October 6, 2017, Special Judge Shurn conducted a hearing on Hummel's motion to correct error. Hummel was unable to present any additional authority. Hummel stated he "was just under the impression that today you were gonna' go ahead and deny the Motion to Correct Error and then I was gonna' – uh – I got my – uh – Notice of Appeal ready to send to the Court then we were gonna' move on from there." (Tr. Vol. II at 5.) Special Judge Shurn later confirmed, "So, I'm just gonna' show we had a telephonic case management conference today and – on the Motion to Correct Errors and it's denied and then [Hummel is] gonna' appeal." (*Id*. at 7.)

# Discussion and Decision

[9] Hummel argues Special Judge Shurn had the authority to accept the agreement between him and the State. Hummel asks this court to clarify the special judge's authority to accept such agreements and to insist the State be bound by the agreement it made with Hummel.

[10] The State cross-appeals and argues this appeal should be dismissed because the order being appealed is not a final, appealable order and Hummel did not follow the correct procedure to proceed with an interlocutory appeal. The State then argues, as to Hummel's assertions, that Hummel has not presented a cogent argument for appeal; thus, the issue is waived. Waiver notwithstanding, the State argues Special Judge Shurn was correct in his assertion he did not have authority to modify the sentence in FA-16 as his appointment was for only the PCR case.

## State's Cross-Appeal

[11] As it could be dispositive, we address the State's cross-appeal first. The State cross-appeals stating Hummel is not appealing from a final appealable order and we should dismiss his appeal.

[12] The post-conviction court entered a final appealable order when it accepted the agreement between the State and Hummel and dismissed Hummel's PCR petition. *See* Ind. Appellate Rule 2(H)(1) ("A judgment is a final judgment if: (1) it disposes of all claims as to all parties . . . ."). Then, when the special judge returned to the bench to revoke that acceptance and reinstate the PCR petition, the court invoked its authority to *sua sponte* move to correct error. *See* Ind. Trial

Rule 59(B) ("The motion to correct error, if any, may be made by the trial court, or by any party."). The court's grant of that motion to correct error was also an appealable final order. *See* App. R. 2(H)(4) ("A judgment is final judgment if . . . it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 . . . ."); Ind. Trial Rule 59(F) ("Any modification or setting aside of a final judgment or an appealable final order following the filing of a Motion to Correct Error shall be an appealable final judgment or order."). Thereafter, Hummel filed his own motion to correct error—which our rules permit him to do in this circumstance. *See Jackson v. Pempleton*, 559 N.E.2d 1193, 1193 (Ind. Ct. App. 1990) (When a "trial court [] alter[s], amend[s], or supplement[s] its findings and/or judgment in its ruling on the first motion to correct error, the parties would have [] the discretion to file another motion to correct error directed to the changed findings and/or judgment."). Therefore, the order from which Hummel appeals is a final appealable order and is not subject to dismissal on the State's asserted ground.

## Hummel's Appeal

### *Acceptance of Agreement[6]*

[13]     Hummel appeals the special judge's determination that the special judge did not have authority, within a PCR action, to accept an agreement between a

_____

[6] While we note the State's argument that Hummel did not include either his original petition or the agreement, this does not preclude our review of the merits of this case. The State acknowledges it did make

petitioner and the State that modified the petitioner's original sentence. Hummel argues Indiana Supreme Court precedent gives a PCR court the authority to accept such agreements between the State and PCR petitioners. Hummel notes our Indiana Supreme Court explained:

> Indiana prosecutors and petitioners for post-conviction relief do resolve post-conviction relief claims on terms that include a sentence different than that imposed at trial (1) prior to adjudication, and (2) after adjudication but prior to resolution on appeal. There are sound policy reasons that our system should permit prosecutors and petitioners for post-conviction relief to agree to resolve post-conviction relief claims, including facilitating resolution of meritorious, difficult-to-defend, and otherwise complex post-conviction issues; making efficient use of limited resources; and promoting judicial economy. To further these policies, we affirm the authority of prosecutors and petitioners for post-conviction relief to agree to resolve post-conviction relief claims on terms that include a sentence different than that imposed at trial; and we affirm the authority of post-conviction courts to accept such agreements.

*Johnston v. Dobeski*, 739 N.E.2d 121, 123 (Ind. 2000) (footnotes omitted), *overruled on other grounds by State v. Hernandez*, 910 N.E.2d 213 (Ind. 2009) (overruling Johnston only "[t]o the extent [it] held that a life sentence was indeterminate and that a prisoner serving a life sentence was eligible for consideration for parole"). Based thereon, our Indiana Supreme Court held

---

an agreement with Hummel, ostensibly regarding Purposeful Incarceration. As such, we will proceed under the presumption that regardless of the substance of Hummel's petition, the State and Hummel negotiated a mutually satisfactory agreement wherein Hummel's sentence was modified to include the prospect of Purposeful Incarceration.

that where "the administrative branch of government acting through the county prosecutor, as part of an effort to resolve and conclude litigation, sought court approval of an agreement that, among other things, included a sentence different than that imposed at trial" the post-conviction court had the authority to accept that agreement and dismiss the post-conviction petition. *Id*. at 126. Nearly a decade later, our Indiana Supreme Court "reaffirm[ed] [its] holding in *Johnston* that the agreement between the prisoner and the county prosecutor was valid." *State v. Hernandez*, 910 N.E.2d 213, 221 (Ind. 2009).

[14] In *Jackson v. State*, 958 N.E.2d 1161 (Ind. Ct. App. 2012), *reh'g denied, trans. denied*, Jackson argued post-conviction proceedings are civil in nature and thus the "post-conviction court had no discretion to deny his proffered agreement[.]" *Id*. at 1165. However, a panel of our court held that while a post-conviction court has the authority to accept such an agreement, "because a post-conviction proceeding is not the equivalent of a civil proceeding[,]" *id*. at 1166, the post-conviction court was not required to accept any agreement.

[15] In light of that precedent, we are constrained to hold that a post-conviction court has the authority to accept sentence modification agreements reached by the State and a post-conviction petitioner that call for the dismissal of the post-conviction petition in exchange for a sentence modification. *See Johnston*, 739 N.E.2d at 126 (holding it to be "within the judicial power to dismiss the [post-conviction] litigation" based on the parties' agreement and "affirming the post-conviction court's acceptance of the 1989 agreement between the State and [petitioner]").

[16]     In addition, we note that, in *Johnston*, after the State and Dobeski reached an agreement that would modify his sentence, the State changed its position and argued the court had no authority to accept the agreement. In response, the Supreme Court said:

> [T]he State should be held to the agreement it made with Dobeski in 1989 for the following reasons. First, affirming the agreement furthers as a general matter the interests identified above-facilitating resolution of meritorious, difficult-to-defend, and otherwise complex post-conviction issues; making efficient use of limited resources; and promoting judicial economy. Some if not all of these considerations were undoubtedly at work in this case. Second, as part of the agreement, Dobeski dismissed his claim for post-conviction relief with prejudice. We see reviving this claim now, almost a decade later, highly problematic for all concerned. Third, the original life sentences had been imposed under an indeterminate sentencing regime that expressly provided for later review. Fourth, practice under the indeterminate sentencing system regularly authorized parole from life sentences after periods of time much less than the revised sentence in this case. Fifth, the sentence provided for in the agreement here corresponds to consecutive presumptive terms under the sentencing regime in effect at the time the agreement was approved.

*Johnston*, 739 N.E.2d at 125-26.

[17]     Despite this precedent in favor of Hummel's position, the State argues Special Judge Shurn did not have authority to accept the agreement to modify the sentence in FA-16 but rather only had the authority to grant or deny the relief sought by Hummel in his petition for post-conviction relief. The State's assertion is premised on the fact that special judges are appointed to hear a

single case, not to adjudicate the court's entire docket. *See Skipper v. State*, 525 N.E.2d 334, 335 (Ind. 1988) (noting "distinction between a judge pro tempore and a special judge is that a special judge is appointed for a particular case, whereas a judge pro tempore is appointed to preside over the entire court for a span of time").

[18] However, to accept the State's argument appears to eliminate the possibility that a special judge could ever preside over a PCR action. A PCR action, by its very design, is a collateral attack on the results of a criminal case that arose under a separate cause number. *See* Ind. Post-Conviction Rule 1. Thus, the presiding judge in a PCR action must have authority to act in such a way that does, in fact, have repercussions for the outcome of a different cause number—in this case, the underlying criminal proceeding. Whether that judge is a special judge or a conventional judge ought not impact that authority. Our Indiana Supreme Court has held a PCR court has the authority to accept agreements presented to it that modify the sentence in the underlying criminal case, *see Johnston*, and we now hold that the authority vested in the judge presiding over a PCR action must be the same, whether that judge is an elected judge, a judge *pro tempore*, or a special judge.

[19] Although Special Judge Shurn was appointed to serve on the PCR action, and not the FA-16 case, Special Judge Shurn had the authority as the PCR judge to accept the agreement between the State and Hummel that modified Hummel's sentence in FA-16. Additionally, like with plea agreements, once the agreement was accepted by the court, the parties were bound by the terms of

their agreement. *See, e.g., Brewer v. State*, 830 N.E.2d 115, 118 (Ind. Ct. App. 2005) ("A plea agreement is a contract, binding upon both parties when accepted by the trial court."), *trans. denied*; *see also Johnston*, 739 N.E.2d at 125 (for sound policy reasons, "the State should be held to the agreement it made with [petitioner]"). Therefore, Special Judge Shurn erred when he *sua sponte* granted his own motion to correct error based on his belief he did not have the authority to accept the agreement reached by the State and Hummel.

# Conclusion

[20] As this appeal arose from a final appealable order, we do not grant the State's cross-appeal request that we dismiss Hummel's appeal. Special Judge Shurn had the authority to accept the agreement between the State and Hummel, and the State is bound by the terms of that agreement. Therefore, we reverse the post-conviction court's revocation of its acceptance of the agreement, which also called for dismissal of Hummel's PCR petition. We remand for the post-conviction court to re-enter its original order enforcing the parties' agreement and dismissing Hummel's PCR petition.

[21] Reversed and remanded.

Riley, J., and Mathias, J., concur.